FRANKLIN TRUST CO. et al. v. STATE OF NEW JERSEY.

In re STEWART.

(Circuit Court of Appeals, First Circuit. August 30, 1910.)

No. 827.

CORPORATIONS (§ 688*)—INSOLVENCY AND RECEIVERS — CLAIMS AGAINST RE-
CEIVER—FOREIGN FRANCHISE TAX.

Where a corporation organized under the laws of New Jersey, but
whose business situs and all its property are in another state, has be-
come insolvent and is being wound up, and its property distributed by a
court of equity in the latter state, a franchise tax imposed upon it under
the law of New Jersey after the commencement of the insolvency pro-
ceedings and the appointment of a receiver, which, as characterized by
the courts of such state, is not a tax in the ordinary sense, but "an arbi-
trary imposition laid upon a corporation without regard to the value of
its property or its franchises," in the nature of a license fee, will not
be enforced in the court of the foreign jurisdiction, and given priority
of payment over the claims of bona fide local creditors.

Putnam, Circuit Judge, dissenting, holds that it was within the discre-
tion of the court to direct the payment of such tax by the receiver when
required by equitable considerations, as where the receiver, acting with
the corporation, by direction of the court continued to exercise the fran-
chise of the corporation by carrying out its contracts and continuing its
business for the benefit of its creditors.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 688.*]

Appeal from the Circuit Court of the United States for the Dis-
trict of Massachusetts.

Suit in equity by the Franklin Trust Company against the Milford
Pink Granite Quarries. On petition of the receiver of defendant for
instructions, the court made an order directing the payment of certain
franchise taxes to the state of New Jersey, from which complainant
and other creditors appeal. Reversed.

J. Butler Studley (Brandeis, Dunbar & Nutter, on the brief), for ap-
pellants.

Arthur Lord (Arthur P. Hardy, on the brief), for the State of New
Jersey.

W. G. Thompson (C. F. Weed and H. G. Tucker, on the brief), for
unsecured creditors.

Before PUTNAM and LOWELL, Circuit Judges, and ALDRICH,
District Judge.

ALDRICH, District Judge. The taxes sought to be enforced in
this case are based upon a statute of a foreign jurisdiction. They are
in the nature of a franchise tax, and the decree of the Circuit Court
gave them preference over unsecured local creditors in this jurisdiction.

The proposition as to what might be the status in this jurisdiction
of a New Jersey tax levied upon property, under rules which exclude
the idea of disproportion and arbitrary imposition, has no bearing
whatever upon the question before us.

The taxes in question and the mode of assessment are admittedly
arbitrary upon outstanding stock, without the remotest reference to

value, and they were imposed upon an insolvent situation subsequent to proceedings in equity and subsequent to the appointment of a receiver.

The question whether taxes of the nature of those in issue shall be enforced and given preference outside the state in a suit involving the rights of creditors foreign to the jurisdiction imposing the taxes is one which concerns substantial rights, and is not to be concluded by what is called the exercise of a discretion necessarily incident to a trial; but, aside from the idea that such a question is not concluded upon grounds of discretion, and that all points come up upon appeals in equity, it is apparent that the Circuit Court, in this case, did not asssume to conclude the point by determining it as one of discretion, but decided it as one involving substantive right.

It is extremely doubtful whether a tax like the one here would be upheld in New Jersey with the conditions reversed; that is to say, a tax in the nature of a fee imposed by Massachusetts upon the franchise of a corporation created in that state, with its property wholly in New Jersey, and its business being wound up in an insolvent proceeding in New Jersey. As stated in Re United States Car Co., 60 N. J. Eq. 514, 43 Atl. 673, a claim like the one under consideration is not a tax in the ordinary sense, but an arbitrary imposition laid upon a corporation without regard to the value of its property or of its franchises.

The corporation before us in a practical and substantial sense is an insolvent corporation, and the proceeding, since the interlocutory decree of December 4, 1905, is one to wind up the corporate affairs in Massachusetts. The corporation is a mere shell, and its existence only a technical one, and it is difficult to see equitable considerations which require that a New Jersey franchise tax or fee, characterized by its own courts as an arbitrary imposition, rather than as a just tax upon property, should be extraterritorially upheld and preferred upon equitable principles against bona fide creditors in Massachusetts who have put their money and labor and materials into the local business of the corporation. At best, under the characterization of the New Jersey courts, it is an arbitrary imposition, not a tax at all, and does not have the elements of a tax, but is something in the nature of a license fee imposed upon the corporation without regard to the value of its property or of its franchises. The corporation being one which was not to do business within the state creating it, but one which was intended to go and does go elsewhere, the so-called tax imposed upon its existence is contrary to all principles of just and "proportional" taxation, and is, therefore, odious in an equitable if not in a legal sense.

It would seem that the latest New Jersey case, that of Ballou v. Flour Milling Co., 67 N. J. Eq. 188–191, 59 Atl. 331, fully sustains the view that such an arbitrary imposition would not be enforced outside of the state, because the New Jersey court there says those courts (referring to the outside courts) would neither allow the state franchise taxes which have accrued since the date of the decree of insolvency nor give priority to them if allowed, and that considerations of comity require the New Jersey courts to be governed by the rules which govern the extraterritorial courts.

It must be remembered that the proceeding here is not ancillary to one in New Jersey, but primary in this jurisdiction, and has reference to local conditions and a fund which has its situs here and which never had a situs in New Jersey, and therefore, under the doctrine and expressions of Ballou v. Flour Milling Co., 67 N. J. Eq. 191, 59 Atl. 331, this court surely has the right to determine what creditors have just claim to the fund in question.

Giving extraterritorial enforcement and priority to a franchise tax possessing the arbitrary, obnoxious, and discriminatory elements of the one in question would not only be contrary to principles of equity, but would be contrary to the decisions of Massachusetts, where the funds of the insolvent corporation and the equitable rights of the creditors are located—contrary to decisions of the courts of that state in respect to her own excise laws. Oliver v. Washington Mills, 11 Allen (Mass.) 268. See, also, Com. v. Savings Bank, 123 Mass. 493. A fee or franchise tax like this has no legal status in foreign jurisdictions unless supported by statute or special equities. We fail to see any equitable considerations upholding this claim which would not exist in respect to such a claim in any winding up proceeding in an extraterritorial court.

It must be borne in mind that this is a proceeding under the general rules of equity, and not a bankruptcy case. New Jersey v. Anderson, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284, was decided upon the broad and imperative bankruptcy section in respect to preference of taxes of all kinds, and not upon equitable considerations at all. That decision was expressly based upon the imperative force of the section of the bankruptcy act, in respect to taxes, which specifically obliges the trustee in bankruptcy to pay all taxes legally due and owing. Therefore that decision in no way touches the question whether an arbitrary imposition of this kind, though legal in the bankruptcy statutory sense, would be upheld and given priority upon general principles of equity in an equity proceeding independent of the bankrupt law. The strong dissenting opinion of Mr. Justice Harlan, the Chief Justice, and Mr. Justice Peckham does, however, deal with the question of equitable priority even in a bankruptcy case. Under the bankruptcy section in respect to taxes a license fee or franchise of the character in question doubtless has a certain legal status until the stock is surrendered and the corporation dissolved; but, when it is proposed to give it enforcement and priority over bona fide creditors of an insolvent corporation in a foreign jurisdiction upon broad principles of equity, independent of the bankruptcy statute, an entirely different question is presented.

The decree of the Circuit Court is reversed, and the case is remanded to that court with directions to enter a final decree disallowing the pending claim of the state of New Jersey for taxes; and neither party recovers costs in this court.

LOWELL, Circuit Judge, concurs in the result.

PUTNAM, Circuit Judge (dissenting). This is an appeal in equity against a direction by the Circuit Court for the District of Massachusetts for the payment by a receiver of certain taxes, arising under the

statutes of New Jersey subsequently to the beginning of the proceedings by virtue of which the receiver was appointed, and, indeed, subsequently to his appointment. The appeal has been argued extensively as though it were an ordinary question of the proof of a claim against an estate in insolvency or bankruptcy, while it is not at all of that nature. It arose in connection with the administration of the estate in the hands of the receiver; and, if supported at all, it can be supported only from that point of view. Therefore, at the outset, we disregard the great mass of authorities which have been cited to us pro and con with reference to claims which can be proved against estates in insolvency or bankruptcy, or relative to priorities between such claims.

The real question is whether the amounts directed by the Circuit Court to be paid were such sums as arise during the administration of an estate in the hands of a receiver, or in connection therewith, as to which it necessarily follows that the chancellor has a certain discretion, and whether, under the circumstances, that discretion was properly exercised here. So far as the question involved has any peculiarity outside of the fundamental principles of equity applicable to the administration of estates in the hands of receivers, this appeal is practically without precedent, and without the decision of any court which authoritatively binds us. The facts are somewhat complicated, and the legal incidents which surround the main proposition as we have described it are even more complicated.

The Milford Pink Granite Quarries is a corporation organized under the laws of the state of New Jersey. It owned quarries and other real estate in Massachusetts, and also had a plant there for operating the quarries. So far as this record is concerned, no proceedings were taken in New Jersey, and no receiver of the assets of the corporation was appointed in New Jersey; and the receivership to which this appeal relates was not ancillary, but primary.

The Milford Pink Granite Quarries executed two mortgages to secure its bonded indebtedness. The first mortgage was to the Franklin Trust Company, trustee, and covered its real estate and appurtenant plant in Massachusetts. The corporation having become financially embarrassed, and having a contract involving over a million dollars which offered a large profit, and which it was desirable should be worked out, the Franklin Trust Company filed in the Circuit Court for the District of Massachusetts, on the 22d day of November, 1905, the bill now before us, which was of the kind resorted to to bridge over financial difficulties, and thus containing no prayer known under the proper rules of equity. At a subsequent stage of the proceedings, the Franklin Trust Company filed a bill in the nature of a supplemental bill asking foreclosure, but the details in reference thereto have not been called to our attention. Immediately on the filing of the first bill, by the consent of all parties concerned, Stewart was, on the 28th day of November, 1905, appointed receiver of all the property, rights, and franchises of the Milford Pink Granite Quarries.

The receiver was authorized to take immediate possession of the property, and to continue the operation of the quarries until the further order of court, with full authority to carry on the business of

the corporation and to prosecute and defend suits. There is no indication in this order of any purpose of winding up the affairs of the corporation, although subsequently, on December 4, 1905, there was an interlocutory decree, entered apparently by the consent of all parties, providing for the proof of claims and the distribution of assets, without any special provision as to priorities. The practical effect, however, of this interlocutory decree, was, as well said by the complainant, to convert the proceeding into one for winding up the assets of the corporation in the district of Massachusetts.

The method of the operation of the quarries in Massachusetts will be shown briefly further on. As its result, and from some other sources, without disposing of any portion of the substance of the property which it was finally agreed was covered by the mortgages to which we have referred, the receiver accumulated a considerable fund, though not sufficient by a very large percentage to pay the unsecured claims which had been proved as ordered. Meanwhile, in reply to an application of the receiver filed on June 23, 1908, and amended on July 3, 1908, the state of New Jersey set up a claim, by an answer filed on July 6, 1908, for taxes for the years 1906, 1907, and 1908, of $2,272.80 for each year, with the further claim that they were entitled to priority from the assets in the hands of the receiver. These were clearly not a property tax, but were merely a license or franchise tax, entitled under the laws of New Jersey to priority in case of insolvency, all as sufficiently described in New Jersey v. Anderson, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284. That case decided that this license or franchise tax is constitutionally valid, and that under the provisions of the present bankruptcy statutes such taxes would be entitled to priority in proceedings in bankruptcy commenced after they accrued, although in a district other than that of the state where they were assessed. So far the law is settled; but this is not a bankruptcy proceeding within the meaning of New Jersey v. Anderson, and the taxes in question accrued after the proceedings commenced.

In accordance with the description of this license or franchise tax in New Jersey v. Anderson, it is based entirely upon the nominal amount of outstanding stock of the corporation and has no reference to the value of the stock or to the value of the assets of the corporation. It may be assessed so long as the corporate stock has not been surrendered and canceled or the corporation not finally dissolved, although the corporation is absolutely insolvent and worthless. It is well described by the Court of Errors and Appeals in New Jersey in the United States Car Company Case, 60 N. J. Eq. 514, 516, 43 Atl. 673, 674, as "an arbitrary imposition laid upon the corporation, without regard to the value of its property or its franchise, and without regard to whether it exercises the latter or not." Therefore, notwithstanding in that case the corporation was insolvent and had gone into the hands of a receiver, this tax was continued to be lawfully assessed after the receiver was appointed and ordered to be paid by the receiver out of assets which he had himself secured. The claim of the state of New Jersey on this appeal follows strictly the decisions of the court in the case last cited, particularly because the taxes were assessed at and for periods subsequent to the appointment of the receiver, and in this

case are sought to be paid out of the fund gathered by the receiver, as we have said.

Both the secured and the unsecured creditors of the corporation claim that they are entitled to certain preferences as against each other as to the marshaling of whatever may be herein paid out to New Jersey; but there is nothing in that for us to consider. By an order of court entered on June 29, 1908, allowing and establishing an agreement for the compromise of various questions between the creditors in this litigation, including the trust companies and unsecured creditors who appear of record, apparently all matters in controversy between them were adjusted. It was then settled that, from the moneys in the hands of the receiver, or coming into his hands, certain sums were to be deducted, and, with the rest, there was to be deducted and paid out whatever amount the court should award to New Jersey "as a preferred claim or direct obligation of the receiver for franchise taxes," being the same now under discussion; and that, after making this payment, together with others agreed on, the receiver was to divide the balance, one half to the Franklin Trust Company on the one part, and the other half, subject to some further deductions expressly named, to the unsecured creditors. This relieves us of any question of marshaling, and requires us only to determine whether or not New Jersey is entitled to all of these alleged franchise taxes or any of them.

As we have said, there has been much discussion as to the character of the claims of New Jersey; that is, whether they were to be proved under the order of the court to which we referred, subject, of course, to the further claim of the appellants that, if they were to be proved, the time limited for them to be proved had expired. No question of this kind, however, arises, because, as we have said, it is clear that, so far as New Jersey has any claims for the taxes in dispute here, they are, within the language we have already quoted, "direct obligations of the receiver," arising in the course of the administration of the property, and not merely technically "preferred," and to be proved as such.

We have said that the receiver here is a receiver of primary jurisdiction, and not ancillary. We have also shown, or it is clear, at any rate, that his authority can be exercised only within the district of Massachusetts, and that the property from which the funds in his hands were derived was located entirely in that district. For all the purposes of this case it is a question of enforcing within the state of Massachusetts a license or franchise tax arising and accruing in the state of New Jersey under the laws of the latter state. It is also a question of enforcing taxes which primarily rest on the corporation, and which primarily have no standing against the receiver or the assets in his hands, because they accrued after the receiver was appointed, and because he was appointed in a foreign jurisdiction, and because the taxes were not a claim provable against the receiver or the assets in his hands, as they arose after he was appointed. If they had accrued before the bill now before us was filed, they might stand, perhaps, as a claim to be proved, either secured or unsecured. But any tax assessed by the state of New Jersey could not, under the rules of international law, be assessed directly against the receiver appointed by a

court of a foreign jurisdiction, or against assets whose locality was in a foreign jurisdiction, as were all the assets which are involved here. Therefore, in order to have any standing, the taxes in question here must be supported by some local statute or by the fundamental rules of equity.

Any other proposition would hardly be supported by the rules of international law, because generally those rules have no regard to the revenue systems of foreign jurisdictions, and provide no method for enforcing or advancing the same. We, perhaps, need for present purposes to refer only to section 257 of Story on Conflict of Laws, in any edition of that work. New Jersey v. Anderson, 203 U. S. 483, 27 Sup. Ct. 137, 51 L. Ed. 284, impliedly recognizes this principle, because it protects this exact franchise tax in view of the fact that the present bankruptcy laws make a "wide departure" from the provisions of the bankruptcy statute of 1867, in that the present laws expressly cover taxes imposed by any state, while the act of 1867 gave a preference only to those accruing to the state in which the proceedings were instituted. The vice chancellor, in Ballou v. Flour Milling Company, 67 N. J. Eq. 188, 59 Atl. 331, decided on June 29, 1904, expressly recognized these rules with reference to this particular franchise tax. One of the ancillary receivers in another state, appointed in another state, resided in New Jersey, but at page 190 of 67 N. J. Eq., 59 Atl. 331, the vice chancellor said that the fund was composed wholly of the proceeds of property and operations which never had any actual or legal situs in New Jersey. At page 191 of 67 N. J. Eq., 59 Atl. 331, he observed that the foreign courts would neither allow the state franchise taxes which had accrued since the date of the decree of insolvency, nor give priority to them if allowed. It is true that the opinion in that case was largely composed of dicta. Nevertheless, it was carefully and thoughtfully expressed, and it clearly stated the law as held by the authorities dealing with international relations in the manner we have said. The insolvency statutes of Massachusetts, on the same principle, expressly discriminated against foreign taxes.

The general proposition in reference to foreign revenue laws was stated by Lord Mansfield as a settled principle in Holman v. Johnson, 1 Cowp. 341, 343 (1775), and again in Planche v. Fletcher, 1 Doug. 251 (1779). It is true that Dicey, in his very valuable work on the Conflict of Laws, at page 567 of the American edition, notes the fact that these decisions are not of recent date, and that their validity may now be open to question. He cites no authorities contravening them. It is true that, in the somewhat broader view towards international relations of modern days, there would be a disposition under equitable circumstances to uphold the right to realize taxes although in a foreign jurisdiction; but this would certainly be only as to taxes equitably assessed, bearing equally on persons and property. The franchise taxes in question here are of a very different character. They are purely and arbitrarily instituted for obtaining revenue, without any provision for an equitable distribution, or for reasonable or fair assessment. They even discriminate in the most marked manner in favor of corporations carrying on at least 50 per cent. of their business in the state of New Jersey.

Even the minor local taxes to which the people of the country are accustomed, levied equally according to just valuations, do not create a debt in the proper sense of the word. This is recognized generally, and has been expressly stated in New Jersey v. Anderson, 203 U. S. 483, already cited, at page 492, 27 Sup. Ct. 137, 51 L. Ed. 284, reaffirming the language of Meriwether v. Garrett, 102 U. S. 472, 513, 26 L. Ed. 197. While it is generally said that no action for even the equitable taxes which we refer to can be maintained, and that the remedy is only by special proceedings, it is true that in some states it is held otherwise; but in those jurisdictions the form of an action of debt lies, although there is no real debt, precisely as it lies even for a qui tam penalty. Also, it is true that the statute in question here declares the tax a debt; but, again, New Jersey v. Anderson, at page 491 of 203 U. S., 27 Sup. Ct. 137, 51 L. Ed. 284, lays down certain rules, applied there under different circumstances, which require this court to determine the nature of this obligation on general principles, and not from the local statutes. Altogether, we are satisfied that it is not usu-ally obligatory on courts of equity in foreign jurisdictions to assist New Jersey in collecting taxes of the class of those in question here.

Therefore, we do not perceive any doubt with reference to the sums claimed here from the point of view of any legal obligation resting on the Circuit Court for the District of Massachusetts. We have shown that, as the taxes here claimed accrued after the proceedings in the Circuit Court commenced, or certainly after the interlocutory decree for proof of claims was entered, there was no demand which could be thus proved in the ordinary sense of the word. Also, it is impossible to conceive that the state of New Jersey could assess a tax against a foreign receiver. It may assess this tax against its own corporations, but this would not attach as a matter of law against a foreign receiver; and, more especially, the state could not assess a tax which would be a lien on the assets in his hands. From every point of view, we must maintain that that state has no relief here, except as based upon some special equity, and except as having some proportionate relation thereto.

None of the authorities cited to us contravene any of the propositions we have made. Nearly all of them, if not all of them, arose in New Jersey, and related to proceedings in that state. We find nothing in the opinion of the learned judge of the Circuit Court that lays down any positive rule other than that reached by us. His opinion is based on the peculiar circumstances of this case, which show that the receiver was not content to rely on his rights as receiver, but proceeded under a supplemental contract made, after he was appointed, by the Milford Pink Granite Quarries with the consent of all concerned. The contract to which we refer was a lengthy one, made with the express approval of the Circuit Court, according to an interlocutory decree entered on December 21, 1905; by virtue of which contract, and of which interlocutory decree, the work was done at the quarries out of which the fund in the hands of the receiver mainly, if not entirely, arose. The contract included a terminable lease executed by the Milford Pink Granite Quarries and Stewart as receiver, and others, to the Milford Stone Company, on December 20, 1905. It was so executed by the Milford Pink Granite Quarries by additional ex-

press authority of its executive committee, and of its directors, as shown by the record of their proceedings of December 20, 1905. The arrangement was intended to secure, through the assistance of the Milford Stone Company, the performance of the large contract referred to in the first part of this opinion. It was in this way that the receiver, under the direction of the court, availed himself of the corporate existence of the Milford Pink Granite Quarries, and of its franchises. Therefore, the learned judge of the Circuit Court based his action, not so much on any strict rule of law as on the facts we have just stated, as appears from the following extracts from his opinion:

"At the time of the appointment of the receiver the defendant corporation had certain valuable outstanding contracts for the furnishing of stone from its quarries. The receiver, the secured and unsecured creditors, and the stockholders, in fact all parties in interest, were desirous of completing these contracts, and especially the so-called Pennsylvania Railroad Terminal contracts. The completion of these contracts required the continued operation of the quarries—in other words, the continued exercise of the franchise granted by the state of New Jersey. For want of sufficient funds in his hands, the receiver was unable to continue the operation of the quarries, and consequently, with the consent of the court and of all parties in interest, the property in the hands of the receiver situated in the town of Milford was leased to a new corporation called the Milford Stone Company, under the indenture dated December 21, 1905, for the purpose of operating the quarries and completing these contracts. By this means the quarries were continued in operation until January, 1907, and the receiver and the creditors obtained the profits derived from these contracts.

"In a case such as is here presented, where the receiver exercises the franchise of the corporation, either directly or through a lessee, and with the consent and co-operation of the creditors, for the purpose of increasing the assets of the estate, I think the franchise tax is properly chargeable as included in the expenses of the administration of the estate while in the receiver's hands."

The consequence was that the allowances made by the learned judge of the Circuit Court which are now appealed against had a basis of equity independently of the law of the state of New Jersey; and they were a matter of administration, within the legal discretion of the Circuit Court, and not an application of the statutes of New Jersey in any method of the kind now objected to. We think, under the circumstances, the allowances were supported by fundamental principles which equity justly recognizes; but we are also of the opinion that, as active operations, in accordance with the contract to which we have referred, ceased on or about the 1st day of January, 1907, no allowance should be made as of January, 1908. The allowances should justly be limited to the franchise taxes of the two preceding years, 1906 and 1907.

As illustrating the equities which support this proceeding, we refer to an opinion of the chancellor in George Mather's Son's Company, 52 N. J. Eq. 607, 611. This case is also found in 30 Atl. 321, 322. While the chancellor, though sitting in New Jersey, refused to order a receiver to pay the franchise tax as such, he clearly pointed out the equity of an allowance on the principles on which this opinion is based, and on which the Circuit Court acted. He said as follows:

"Where the ordinary and usual business of the corporation is continued, as in the present instance, at a profit, in the name of the company, by the receiver, in the hope that the financial difficulties may be adjusted, and the assets may be restored to the company, there can be little hesitation in conclud-

ing that it is the duty of the receiver to pay the tax while he continues the business."

While it was true that the case was reversed on the main proposition involved, it is also true that the New Jersey Court of Errors and Appeals never had any occasion to reverse or observe against this proposition. What was thus said by the chancellor seems to us to carry on its face so much semblance of a fundamental proposition of the law of equity that it needs neither authority nor discussion to support it. What was there said applies exactly to this case as now interpreted. Also, for an understanding of the certain discretion given the chancellor with reference to instructions to receivers, we may well refer to Dickinson v. Saunders, 129 Fed. 16, 63 C. C. A. 666, decided by this court on April 13, 1904; especially to what is there said at pages 20 and 22 of 129 Fed., pages 670, 672, of 63 C. C. A.

In Dickinson v. Saunders, just referred to, directions were given the receiver in the equitable discretion of the court for payment of certain claims which arose before the receiver was appointed, although the payments were not strictly in harmony with the bankruptcy statutes of the United States or the insolvency laws of Maine, where the corporation was created, or the insolvency laws of Massachusetts, where the receiver was appointed. It was said, at page 20 of 129 Fed., at page 670 of 63 C. C. A., that these various legislative systems declared policies "which a chancellor in hunting about for some analogy to guide the equitable administration of his office might lay hold of under some circumstances." This applies here where the bankruptcy statutes of the United States would protect these taxes in proceedings in bankruptcy if they accrued before the proceedings commenced. This points out a determined policy of the bankruptcy statutes which the chancellor would be entitled to regard in view of the fact that the special circumstances of the case in that respect do not reach the merits of the claim. Further illustrations of the extent of the equitable powers of the chancellor with reference to the payment of claims by receivers which are not strictly enforceable are found in the well-known cases of Hale v. Frost, 99 U. S. 389, 25 L. Ed. 419; Miltenberger v. Logansport Railway Company, 106 U. S. 286, 311, 1 Sup. Ct. 140, 27 L. Ed. 117; Union Trust Company v. Railway Company, 117 U. S. 434, 457, 6 Sup. Ct. 809, 29 L. Ed. 963; and especially in Jerome v. McCarter, 94 U. S. 738, 24 L. Ed. 136, where a discretion was used for completing a railroad by a receiver for the purpose of saving a land grant. In Girard Insurance Company v. Cooper, 162 U. S. 529, 16 Sup. Ct. 879, 40 L. Ed. 1062, a similar discretion was exercised with reference to the completion of a building contracted for in behalf of the railway company involved.

Even at the common law, where no equitable principles are involved, the tenant who refused to do fealty to his lord was held guilty of petty treason. In equity no one can accept benefits without compensation, even though there is no legal claim therefor. This was illustrated especially in Louisville Railroad Company v. Wilson, 138 U. S. 501, 507, 11 Sup. Ct. 405, 34 L. Ed. 1023, as against a receiver, where the receiver was directed to pay compensation to an attorney for securing certain assets before the receiver was appointed, of which the receiver

had the advantage. A like result was reached with reference to the construction of the building in Girard Insurance Company v. Cooper, already cited; although, of course, this rule is a limited one, and can apply only where the benefit comes quite directly into the hands of the receiver. In the present case, as said in New Jersey v. Anderson, already referred to, at page 493 of 203 U. S., 27 Sup. Ct. 137, 51 L. Ed. 284, the state of New Jersey had a right to fix the terms of existence, and to provide for the continued existence, of corporate franchises on the condition of the payment of the tax in question. If the Circuit Court had proceeded in completing the work which we have described through the hand of its own receiver, and had not availed itself of the franchises of the corporation in question, the equities might have been entirely different. But, under the circumstances, it seems impossible to deny that equity will not permit that the court should make active and effective use of those franchises without due consideration for the state of New Jersey, which created and maintained them.

A careful examination of what we have abstracted from the opinion of the learned judge of the Circuit Court leads to the result that he did not hold that the state of New Jersey had a legal claim independently of the particular circumstances to which we have alluded, and which are also referred to by him. On the other hand, while not expressly so stated, the fair inference is that he was availing himself of a proceeding according to the principles governing a chancellor exercising a judicial discretion. In view of the facts that in the cases of receiverships this discretion has been so broadly exercised as indicated by the decisions we have cited, that in exercising this discretion the chancellor looks about for analogies in the way pointed out in Dickinson v. Saunders, already cited, at page 20 of 129 Fed., 63 C. C. A. 666, and especially in view of the fundamental rule represented by the authorities that it is one of the underlying principles of equity that it will not accept benefits without making compensation therefor, we are unable to perceive anything to come from the refusal to affirm the decision of the Circuit Court except a result entirely inequitable.

It would probably be a dangerous proposition to admit that the assets of an insolvent corporation in one jurisdiction may be swept away under a franchise tax like this in question here to another jurisdiction, and thus the rights of creditors in the first jurisdiction perhaps fully defeated; while it is an entirely different proposition to hold that a receiver must recognize a just quid pro quo where, instead of relying on his own rights, he finds it useful or necessary, with a hope of securing large profits, to hold to the franchises to which a particular tax relates. Therefore, we hold that the allowances made by the Circuit Court must be sustained so far as they appertain to the taxes assessed for the years 1906 and 1907, but must be disallowed so far as they relate to the tax assessed for 1908.

The decree of the Circuit Court allowed interest. Probably the matter was not called to the court's attention. Nevertheless, the allowance is assigned as error. The present record shows that a particular sum was held by the receiver awaiting the result of this litigation. We think it is now settled that, under such circumstances, interest beyond what the receiver actually collects is not allowable until from the time

when it is finally concluded that one party or the other is at fault. Thomas v. Western Car Company, 149 U. S. 95, 116, 117, 13 Sup. Ct. 824, 37 L. Ed. 663; Hutchinson v. Otis, 115 Fed. 937, 944, 53 C. C. A. 419, applied in Edwards v. Bay State Gas Company (C. C.) 177 Fed. 573.

I think the judgment should be:

The decree of the Circuit Court is modified so far as to strike out the allowance of $2,272.80 for the year 1908, and also to strike out all allowances of interest, and as so modified is affirmed; and neither party recovers costs of appeal.

In view of the fact that this record is a full record, and to comply with the practice as I understand it, and thus to avoid unnecessary delays, I think the judgment, whichever way rendered, should be final. Moreover, I have not considered the question of awarding costs against the state of New Jersey. As this bill is in the nature of a bill by a trustee for instructions, it may be costs of both parties should be paid out of the fund. No costs were awarded in favor of New Jersey in the Circuit Court, and I am not prepared at present to agree to awarding them against a sovereign state of the Union.

NOTE.—The following is the opinion of Colt, Circuit Judge, in the court below:

COLT, Circuit Judge. Upon the state of facts presented in this record I am of opinion that the receiver of the defendant corporation should be directed to pay the franchise taxes for the years 1906, 1907, and 1908, assessed by the state of New Jersey, out of the funds now in his hands.

The conclusion I have reached is based upon the following propositions:

1. Under the statutes of the state of New Jersey, the defendant corporation was subject to the payment of an annual franchise tax of one-tenth of 1 per cent. on the amount of capital stock outstanding on the 1st of January preceding the making of its return to the State Board of Assessors, and such tax was made a preferred debt in case of insolvency. Laws of the State of New Jersey Relating to Business Corporations, §§ 150, 153.

2. The state of New Jersey had a right to fix the terms of the defendant's existence as a corporation, and to provide that for the continued existence of its franchise it should pay certain sums of money fixed by the amount of its yearly outstanding capital stock. This is substantially the language used by the Supreme Court concerning the New Jersey franchise tax in New Jersey v. Anderson, 203 U. S. 483, 493, 27 Sup. Ct. 137, 51 L. Ed. 284. See, also, Home Insurance Company v. New York State, 134 U. S. 594, 599, 600, 10 Sup. Ct. 593, 33 L. Ed. 1025; Metropolitan Street Railway Company v. New York, 199 U. S. 1, 8, 37, 25 Sup. Ct. 705, 50 L. Ed. 65.

3. The defendant corporation was organized under the laws of New Jersey for the purpose of quarrying granite from quarries located in the town of Milford and elsewhere in the state of Massachusetts. Its business office, plant, and the larger part of all its property were in Milford. It never had any property or transacted any business within the state of New Jersey.

4. When the defendant corporation took its charter and franchise into the state of Massachusetts, all persons who voluntarily contracted with it subjected themselves to the laws of the state of New Jersey affecting its powers and obligations. Canada Southern Railway Company v. Gebhard, 109 U. S. 527, 537, 3 Sup. Ct. 363, 27 L. Ed. 1020; Relfe v. Rundle, 103 U. S. 222, 225, 226, 26 L. Ed. 337.

5. By the decree of November 28, 1905, appointing the receiver, he was authorized, among other things, "to continue the operation of the quarries" and "to pay all taxes, assessments, and liens at any time laid or assessed upon or in respect of the said quarries, or property, or business, and all expenses properly incurred by him in working the said quarries."

6. At the time of the appointment of the receiver the defendant corporation had certain valuable outstanding contracts for the furnishing of stone from its quarries. The receiver, the secured and unsecured creditors, and the stockholders—in fact, all parties in interest—were desirous of completing these contracts, and especially the so-called Pennsylvania Railroad Terminal contracts. The completion of these contracts required the continued operation of the quarries—in other words, the continued exercise of the franchise granted by the state of New Jersey. For want of sufficient funds in his hands, the receiver was unable to continue the operation of the quarries, and consequently, with the consent of the court and of all parties in interest, the property in the hands of the receiver situated in the town of Milford was leased to a new corporation called the Milford Stone Company, under the indenture dated December 21, 1905, for the purpose of operating the quarries and completing these contracts. By this means the quarries were continued in operation until January, 1907, and the receiver and the creditors obtained the profits derived from these contracts.

7. In a case such as is here presented, where the receiver exercises the franchise of the corporation either directly or through a lessee, and with the consent and co-operation of the creditors, for the purpose of increasing the assets of the estate, I think the franchise tax is properly chargeable as included in the expenses of the administration of the estate while in the receiver's hands. The law is well settled in New Jersey that a franchise tax levied during the receivership of an insolvent corporation is entitled to preference. The leading case on this subject is In re United States Car Company, 60 N. J. Eq. 514, 43 Atl. 673. See, also, King v. American Electric Vehicle Company, 70 N. J. Eq. 568, 571, 62 Atl. 381; Chesapeake & Ohio Railway Company v. Atlantic Transportation Company, 62 N. J. Eq. 751, 48 Atl. 997; Duryea v. American Woodworking Machine Company (C. C.) 133 Fed. 329; Conklin v. United States Shipbuilding Company (C. C.) 148 Fed. 129.

I shall, therefore, direct the receiver to pay these taxes out of the fund in his hands. As this case was heard upon petition, answers, and an agreed statement of facts, the parties have the right of appeal to the Circuit Court of Appeals.

A decree may be entered in accordance with this opinion.