**In re GREYLING REALTY CORPORA-TION.**

**TROUTMAN et al. v. COMPTON.**

**No. 226.**

Circuit Court of Appeals, Second Circuit.
Jan. 7, 1935.

William L. Ransom, of New York City, and Pearce Matthews and Little, Powell, Reid & Goldstein, all of Atlanta, Ga. (Robert E. Coulson, of New York City, Arthur G. Powell, of Atlanta, Ga., Wesley A. Sturges, and Henry Jaffe, of New York City, of counsel), for appellants.

Cabell, Ignatius, Lown & Blinken, of New York City (Hartwell Cabell, M. H. Blinken, and Lauson H. Stone, all of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The Greyling Realty Corporation, the debtor, is owned, through stock ownership, by the National Surety Company, now in liquidation by the superintendent of insurance of the state of New York. Article 11 of the N. Y. Insurance Law (Consol. Laws, c. 28, § 400 et seq.). The business of the National Surety Company, among other things, was guaranteeing collateral trust bonds secured by mortgages, which it did to the extent of about $45,000,000, now outstanding. These mortgages secured collateral trust bonds issued by owners of real estate, and deposited with corporate trustees under trust indentures. The National Surety Company,

as guarantor, was called upon to make good defaults of mortgages. It did so through this debtor, to which it advanced some $30,000,000 for that purpose, paying taxes, insurance premiums, making repairs, and acquiring property at foreclosure, all for the purpose of maintaining the value of the security underlying the collateral trust bonds in the hands of the public. There remains unpaid to the National Surety Company about $14,000,000. The debtor Greyling Realty Corporation took over mortgages, servicing the same, and, where mortgages were foreclosed, the corporate trustee delivered the mortgage to the debtor against a letter of indemnity executed by the National Surety Company. The expenses of foreclosure were paid by this debtor, and it paid defaults in taxes, interest, and arrears of principal, using therefor the funds advanced by the National Surety Company. A new mortgage would then be executed, in respect of property acquired in foreclosure, for such amount as an appraisal of the property foreclosed warranted, and such new mortgage was deposited with the corporate trustee. Any difference between the amount of the original mortgage and the amount of the new mortgage was made good by this debtor who, in such instance, took title to the property foreclosed or did so through its nominees as security for the moneys expended in respect to each property.

On April 30, 1933, the day after the National Surety Company was taken over for rehabilitation, a suit was brought in the superior court of Georgia by holders of bonds, guaranteed by the National Surety Company, against the debtor Greyling Realty Corporation, the National Surety Company, and the corporate trustee and nominees of this debtor, and the Georgia court appointed the appellants temporary receivers. The complaint in that suit alleged a fraudulent conspiracy on the part of the defendants to conceal defaults on a material part of the mortgages. On May 3, 1933, the superintendent of insurance, as rehabilitator of the National Surety Company, brought suit against the Greyling Realty Corporation (a Delaware corporation) in the District Court for the District of Delaware. Receivers in equity were appointed April 30, 1933, in the Georgia state court.

The appellant Troutman was the attorney retained from time to time by the National Surety Company, and appellant Matthews was employed by the debtor to do abstract work in Georgia. Both knew of the proceedings in New York for the rehabilitation of the National Surety Company. Receivers ancillary to the suit in Delaware were appointed in twenty other jurisdictions. Answers were filed in the Georgia suit and an agreement reached between the appellants and defendants there for a consent order having the receivership in Georgia made ancillary to the domiciliary receivership in Delaware. This decree was entered accordingly July 29, 1933.

The order below directed appellants to turn over to the trustee of this debtor "all moneys, property * * * which are now in their custody, possession or control and/or which came into their hands by virtue of their appointment as receivers by the Superior Court of Fulton County, Georgia * * * including, but not being limited to properties standing in the name of Greyling Realty Corporation and/or Interstate Mortgage Company and/or Walton Properties, Inc., and/or Lewis Barber, including as well rents, income, issues, profits, payments for principal and interest on mortgages and other avails of or moneys flowing from the custody, possession and control of the said property as aforesaid. * * * *"

All of the properties held by the appellants were the property of the debtor Greyling Realty Corporation or held by its nominees, Walton Properties, Inc., Interstate Mortgage Company, and Lewis Barber. George B. Compton, the trustee named, was also the trustee for the Walton Properties, Inc., and the Interstate Mortgage Company. The properties standing in the name of Lewis Barber were owned by the Greyling Realty Corporation.

The property which is ordered turned over to the trustee is all the property "which came into their (appellants) hands by virtue of their appointment as receivers by the Superior Court of Fulton County, Georgia."

By the Georgia state court decree, the receivers were authorized to take possession of property belonging to the debtor standing in its name and in the names of Lewis Barber, Interstate Mortgage Company, and Walton Properties, Inc. The order appealed from was consented to by all defendants and all interveners in the Georgia suit as well as the reorganization managers, who hold over 85 per cent. of the class of bonds held by the plaintiffs in the Georgia suit. Moreover the order provided that "the turning over of the property as aforesaid by the said receivers to

George B. Compton, the trustee, as aforesaid, shall be without prejudice to the rights, interest or claims, if any, of any person, firm, or corporation in and to any of said property or the proceeds of any part thereof, and without prejudice to the rights of such parties to assert such claims, if any, in this proceeding upon proper application to this Court."

The apparent purpose of section 77B of the Bankruptcy Act (11 USCA § 207), which provides for proceedings in the reorganization of a corporation and its subsidiaries, is to avoid immediate liquidation of the properties involved, and to rehabilitate rather than liquidate. In equity receiverships for conservation of assets, as heretofore known, ancillary receivers were appointed in the district, other than the domiciliary district, where the corporation had property to administer. Section 77B was planned to bring such proceedings within the paramount and exclusive jurisdiction of one bankruptcy court. It was intended to provide a centralization of administration. Section 77B extended the jurisdiction of the District Court over the affairs of insolvent corporations, gathering in their assets wherever located. Jurisdiction to enjoin and stay any suit to enforce a lien was expressly conferred upon the judge approving the petition. There is no doubt Congress had the power to make the process of the District Court run throughout the United States. Indeed one of the principal reasons given for the enactment of section 77B was to eliminate the necessity of costly ancillary proceedings. In re Chicago, Rock Island & Pacific Ry. Co. (C. C. A.) 72 F.(2d) 443. In the Chicago, Rock Island Case it was held that the domiciliary court had power to issue process outside of its territorial jurisdiction by virtue of section 77 (a) (c), of the act (11 USCA § 205 (a, c). Congress had the right to extend the jurisdiction of any District Court to the entire United States. United States v. Union Pacific R. Co., 98 U. S. 569, 604, 25 L. Ed. 143.

Section 77B (a) of the act, 11 USCA § 207 (a), grants exclusive jurisdiction of the debtor and its property wherever located for the purpose of this section. Section 77B (c) (10) of the act, 11 USCA § 207 (c) (10), grants the power of staying the commencement or continuation of suits against the debtor until after final decree, or the staying of the commencement or continuance of any judicial proceedings to enforce any lien upon the estate until after final decree. And section 77B (i) of the act, 11 USCA § 207 (i),

provides: "If a receiver or trustee of all or any part of the property of a corporation has been appointed by a Federal, State, or Territorial court, whether before or after this amendatory Act takes effect [June 7, 1934 at 12 o'clock noon] a petition or answer may be filed under this section at any time thereafter by the corporation, or its creditors as provided in subdivision (a) of this section and if such petition or answer is approved, the trustee or trustees appointed under this section, or the debtor if no trustee is appointed, shall be entitled forthwith to possession of and vested with title to such property, and the judge shall make such orders as he may deem equitable for the protection of obligations incurred by the receiver or prior trustee. * * * "

Thus the scheme of the act was to bring all the property of the debtor, wherever it may be located, into the exclusive jurisdiction of one court. By a wide sweep of power, exclusive jurisdiction of all property wherever located is given with the power to stay or enjoin "any judicial proceeding to enforce any lien upon the estate," as well as the power to stay not only the commencement, but also the continuation of suits against the debtor.

The court thus acquiring jurisdiction over the property of the debtor does so throughout the United States as against any state or federal receiver theretofore appointed in any other proceeding.

The appellants argue that the property in Georgia was in their hands, as receivers of that court, and that the District Court of the United States had no jurisdicion over them; that the rule of comity required the trustees named for this debtor to apply to the Georgia state court for the property. It has been long recognized that, when the jurisdiction of the bankruptcy court has attached in a particular case, as when petition is filed and an adjudication had, the authority of the court in respect to the bankruptcy is not territorially restricted to the boundaries of the judicial district or of the state, but extends over the debtor's entire property and the estate wherever situated. Babbitt v. Dutcher, 216 U. S. 102, 30 S. Ct. 372, 54 L. Ed. 402, 17 Ann. Cas. 969; In re Wood and Henderson, 210 U. S. 246, 28 S. Ct. 621, 52 L. Ed. 1046; In re Dempster (C. C. A.) 172 F. 353. The jurisdiction of the District Court in bankruptcy, even prior to the enactment of section 77B, is exclusive of all other courts. Gross v. Irving Trust Co., 289 U. S. 342, 53 S. Ct. 605, 77 L. Ed. 1243, 90 A. L. R. 1215; Isaacs v. Hobbs, etc., Co., 282 U. S. 734, 51 S. Ct.

270, 75 L. Ed. 645; In re Grafton Gas & Elec. Co. (D. C.) 253 F. 668; In re Beaver Cotton Mills (D. C.) 275 F. 498.

In the bill filed in Georgia, resulting in the appointment of receivers there, charges of conspiracy and fraud were made in the complaint. These were not pressed, and all the defendants who answered made formal answer without pleading to the merits, and reserved the right to plead to the merits if need therefor should arise. No defendant admitted that part of the allegations of the bill alleging fraud or misrepresentation. The decree entered does not justify the claim made now that charges of fraud and misrepresentation were pressed. There was no hearing on the merits.

■ The appellants concede that they do not hold title to any of the property in their possession in their own right, but for the benefit of others. Receivers have no title to the property except that they hold as custodians or stakeholders for those who may be decreed ultimately to be the owners of the property. Since the decree entered on July 29, 1933, made the appellants ancillary to the domiciliary receivers in Delaware, and provided that they should convert into cash "the remaining properties in this State belonging to Greyling Realty Corporation or held by others in this State for it, * * *" and directed them "to deliver the net proceeds thereof to the receivers appointed for Greyling Realty Corporation in the District Court of the United States for the District of Delaware in the suit of George S. Van Schaick, Superintendent of Insurance, v. Greyling Realty Corporation," it would appear that they were holding title for the purposes of receivership in Delaware. Such a receivership cannot be regarded as an assertion of adverse title irrespective of mandatory powers granted under section 77B. It has long been established that a receivership in a court of chancery grants to the receiver appointed possession of property in custodia legis. Union Nat. Bank of Chicago v. Kansas City Bank, 136 U. S. 223, 10 S. Ct. 1013, 34 L. Ed. 341; Blumenfeld v. Citizens' Bank & Trust Co., 168 Ga. 327, 147 S. E. 581; Tindall v. Nisbet, 113 Ga. 1114, 39 S. E. 450, 55 L. R. A. 225; sections 5475, 5476, 5479, Civil Code of Georgia 1910.

Cases where legal title has been vested prior to bankruptcy and where adverse claim is made, as in Harrison v. Chamberlin, 271 U. S. 191, 46 S. Ct. 467, 70 L. Ed. 897, In re Indiana Flooring Co. (C. C. A.) 62 F.(2d) 763, and In re McCrum (C. C. A.) 214 F. 207, relied upon by the appellants, are not in point. Section 77B was intended to provide for a single administration of, with exclusive jurisdiction over, the debtor's property wherever located, or in whosoever's hands found, regardless of adverse claims thereto which are not to be determined in the court of primary jurisdiction. Receivers theretofore appointed must yield to that jurisdiction such property as they possess.

■ The argument advanced here that the right of the court summarily to direct turning over of assets has been lost by reason of the length of time they have been in possession of the assets is also without merit. Nothing in section 77B indicates any limitation. Its broad language must be held to mean the contrary and to wipe out restrictions. Subdivision (k) of section 77B provides that "All other provisions of this title, except such as are inconsistent with the provisions of this section [77B], shall apply to proceedings instituted under this section. * * *" But this cannot mean that the limitations imposed by section 67f of the act (11 USCA § 107 (f) or otherwise apply to proceedings under section 77B, because clearly such construction would be inconsistent with the provisions of subdivision (i) of section 77B.

■ It is argued that the District Court has not the power to issue its process throughout the United States. Section 77A of the act (11 USCA § 206) provides that "in addition to the jurisdiction exercised in voluntary and involuntary proceedings to adjudge persons bankrupt, courts of bankruptcy shall exercise original jurisdiction in proceedings for the relief of debtors, as provided in section 77B [section 207] of this chapter." And section 77B (a) expressly grants to the court approving the petition, during the pendency of the proceedings under this section exclusive jurisdiction of the debtor and its property wherever located for the purpose of the section. The power to issue its process throughout the United States in furtherance of the purposes of a centralized reorganization is an inevitable conclusion because of vesting such power in the District Court of primary jurisdiction. Section 77B (c) (10).

The principal place of business of this debtor was in the Southern district of New York, and it has been sought as the primary jurisdiction. Its large and extensive holdings have been found beyond the limits of the Southern district of New York, and now the provisions of section 77B have made it pos-

738

sible for that court to maintain jurisdiction coextensive with the location of these holdings. Congress has provided for gathering into that court all the debtor's property, even in the hands of an officer of another court upon the approval of a petition under section 77B when filed, whether appointed before or after section 77B took effect. Such approval has been had. Congress has also provided for the payment of reasonable allowances and expenses of administration to officers of the court from whom the property has been taken.

The return of the property to the territorial jurisdiction of the delivering court has been provided for.

Paragraph (i), § 77B of the act (11 US CA § 207 (i) provides: "If a receiver or trustee has been appointed by a Federal or State or Territorial court prior to the institution of a proceeding under this section, and such proceeding shall be dismissed under subdivision (c), clause (8), of this section, the judge may include in the order of dismissal appropriate orders directing the trustee or trustees, or the debtor if no trustee is appointed, to transfer possession of the debtor's property within the territorial jurisdiction of such court to the receiver or prior trustee so appointed. * * *"

■■ In the absence of legislative provision, the mode of effecting service rests with the court, within the limitations of the authorities. Flexner v. Farson, 248 U. S. 289, 39 S. Ct. 97, 63 L. Ed. 250; Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565. The mode and manner of effecting service was provided in the order of October 5, 1934, and afforded the appellants reasonable opportunity to be heard, and service of that order was made as the court prescribed. It became necessary for the court to make provision for such service because of the extension of the boundaries of the District Court in a proceeding under section 77B. The previous rules respecting the issuance of process outside the territorial limits of the districts are inapplicable to proceedings under this new Bankruptcy Act.

No rule of comity required this trustee in bankruptcy to apply to the state court for an order to turn over the bankrupt's properties in the hands of the officers of that court. The rule suggested in Gross v. Irving Trust Co., supra, may not be regarded as applicable here because section 77B has granted ample authority. Section 77B eliminates the complicated procedure of applying to the state court for authority to enjoin or stay actions against the debtor and confers authority upon the judge having jurisdiction of the reorganization proceedings. It is intended by section 77B that the order to turn over be issued by the court of reorganization.

■ However, the order must be modified so as to permit the receivers appointed by the court of the state of Georgia to apply for payment of expenses and compensation as provided by section 77B (i) of the Bankruptcy Act (11 USCA § 207 (i).

As thus modified, the order is affirmed.