## In re CENTURY SILK MILLS, Inc.

(District Court, S. D. New York.    May 15, 1925.)

No. 28046.

1. **Bankruptcy** ⟺314(6)—**Where involuntary petition was filed against corporation before state franchise tax for following year became due and payable, tax was not "legally due and owing" (Tax Law [Consol. Laws N. Y. c. 60] §§ 209, 211, 214, 215, 219-a to 219-c; Bankruptcy Act, § 64a [being Comp. St. § 9648]).**

Where involuntary bankruptcy petition was filed July 29, 1920, against corporation, and franchise tax assessed against it under Tax Law N. Y. §§ 209, 211, 214, 215, 219-a to 219-c, became due and payable November 1, 1920, for year following, tax was not "legally due and owing," within Bankruptcy Act, § 64a, being Comp. St. § 9648, though adjudication was had after it became due and owing.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Due and Owing.]

2. **Bankruptcy** ⟺314(6)—**State franchise tax assessed on bankrupt corporation held not claim against assets in custody of bankruptcy court, because trustee conducted business after period covered thereby began to run (Tax Law [Consol. Laws N. Y. c. 60] §§ 209, 211, 214, 215, 219-a to 219-c; Bankruptcy Act, § 64a [Comp. St. § 9648]).**

Franchise tax assessed against bankrupt corporation under New York Tax Law, §§ 209, 211, 214, 215, 219-a to 219-c, which became due and payable after involuntary petition was filed, was not claim against assets in custody of bankruptcy court, within Bankruptcy Act, § 64a (Comp. St. § 9648), because of fact that trustee conducted business under orders of court for short time after period covered by tax began to run, tax being imposed on exercise of corporate franchise and not on conduct of business by trustee.

3. **Bankruptcy** ⟺152, 314(6).

Trustee's title relates back to date of filing of involuntary petition, after which no taxing power of state over corporation's franchise can interfere therewith.

In Bankruptcy. In the matter of the Century Silk Mills, Inc., bankrupt. On petition by the State of New York to review an order of the referee granting the trustee's motion to dismiss and expunge claim filed on petitioner's behalf for a franchise tax assessed against bankrupt. Affirmed.

See, also, 296 F. 713.

The following is the opinion of Referee John L. Lyttle:

Under date of December 11, 1924, the State of New York filed with the referee a claim amounting to $3,577.18. The claim, so far as material, reads as follows:

State Tax Department, Albany, N. Y.    Date 1/24/21.    File No. A.

Notice is hereby given that there has been assessed against you the amount set opposite as a franchise tax under article 9–A of the Tax Law. It is payable within thirty (30) days.

Century Silk Mills, 441 Fourth Ave., New York City.

State franchise tax on business corporations for year beginning November 1, 1920, and ending October 31, 1921.

### Taxes, Penalties, etc.

Tax based on income at 4½ per cent. $2,884.82
Interest ........................... 692.36

Total due ...................... $3,577.18

The trustee in bankruptcy, on a petition verified December 17, 1924, moved before me for an order to dismiss and expunge this claim, alleging, in substance, that the claim was filed after the filing of the petition in bankruptcy, and that the business of the

bankrupt was wound up and its assets liquidated. Proceedings were thereupon had before me, as shown by the accompanying stenographer's minutes of December 23, 1924, and January 16, 1925, consisting of 6 pages.

Under date May 4, 1924, a stipulation was filed with me as follows:

"In the proceedings had upon the motion by the trustee in bankruptcy herein to dismiss and expunge the tax claim filed by the state of New York herein in the sum of $3,577.18, the following facts are stipulated by the Attorney General of the state of New York, and the attorney for the trustee, as part of the record: (1) That the tax in question was assessed on January 24, 1921, for the tax period from November 1, 1920, to October 30, 1921. (2) That the trustee in bankruptcy herein filed his trustee's bond and duly qualified as trustee in bankruptcy herein on November 30, 1920. (3) That the trustee in bankruptcy carried on business pursuant to an order in the bankruptcy court until June, 1921."

The question which arises is whether or not the estate in bankruptcy is liable for the aforesaid claim for a franchise tax under article 9-A of the Tax Law (Consol. Laws, c. 60) of the state of New York for the year beginning November 1, 1920. The bankrupt corporation was adjudicated a bankrupt on November 4, 1920, after a petition in bankruptcy had been filed against it on July 29, 1920, followed immediately by the appointment of a receiver on that day. The trustee in bankruptcy was appointed November 29, 1920, and qualified on November 30, 1920.

The bankrupt corporation was organized under the laws of the state of New York, and as such was subject to an annual charge or tax "for the privilege of exercising its franchises in this state in a corporate or organized capacity." Tax Law, § 209. It was required annually, on or about July 1st, to report to the state tax commission its net income for the previous calendar year or its previous fiscal year. Tax Law, § 211.

The charge or tax was required to be computed on the basis of the net income thus reported, and was payable "in advance" for the year beginning on November 1st next succeeding and ending on October 31st next thereafter. Tax Law, § 209. The tax was required to be paid on or before January 1st of each year or within 30 days after notice of the assessment had been given, if such notice was given subsequent to December 1st of the year for which the tax was imposed, and it became a lien upon the real and personal property of the corporation from the time when payable until paid in full. Section 219-c, Tax Law.

For the exercise of its corporate franchise for the period from November 1, 1920, to October 31, 1921, the state tax commission imposed a charge determined on the corporation's net income for the calendar year 1919. The amount of the tax is not disputed. The trustee holds sufficient funds to pay the claim in full, should it ultimately be allowed.

The bankruptcy proceeding was initiated with the filing of the petition on July 29, 1920. It was then that the bankrupt and its creditors were stayed and that its estate actually or potentially passed into the control of the bankruptcy court for settlement and distribution of the estate. Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275, 35 Am. Bankr. Rep. 814.

Section 64a of the Bankruptcy Act (Comp. St. § 9648), reads as follows:

"Sec. 64. *Debts Which Have Priority.* (a) The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality in advance of the payment of dividends to creditors, and upon filing the receipts of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court." It is to be noted that it is not expressly stated therein when the tax shall be due and owing by the bankrupt to entitle it to payment by the trustee.

In my opinion, the reasonable inference is that the tax must be due and owing by the bankrupt at or before the commencement of the proceeding, which is defined in section 1a (10) of the Act (Comp. St. § 9585) as the date of the filing of the petition; and in support thereof I quote from Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208, 27 Am. Bankr. Rep. 262, as follows:

"It is none the less certain that an attachment of the bankrupt's property after the filing of the petition and before adjudication cannot operate to remove the bankrupt's estate from the jurisdiction of the bankruptcy court for the purpose of the administration under the act of Congress. It is the purpose of the Bankruptcy Act, passed in pursuance of the power of Congress, to establish a uniform system of bankruptcy throughout the United States, to place the

property of the bankrupt under the control of the court, wherever it is found, with a view to its equal distribution among the creditors. The filing of the petition is an assertion of jurisdiction with a view to the determination of the status of the bankrupt and a settlement and distribution of his estate. The exclusive jurisdiction of the bankruptcy court is so far in rem that the estate is regarded as in custodia legis from the filing of the petition. It is true that, under section 70a of the act of 1898 [Comp. St. § 9654], the trustee of the estate, on his appointment and qualification, is vested by operation of law with the title of the bankrupt as of the date he was adjudicated a bankrupt; but there are many provisions of the law which show its purpose to hold the property of the bankrupt intact from the time of the filing of the petition, in order that it may be administered under the law, if an adjudication in bankruptcy shall follow the beginning of the proceedings. Paragraph 5, section 70a, in reciting the property which vests in the trustee, says there shall vest 'property which, prior to the filing of the petition, the bankrupt could by any means transfer or which might have been levied upon and sold under judicial process against the bankrupt.'

"Under section 67c [Comp. St. § 9651] attachments within four months before the filing of the petition are dissolved by the adjudication in the event of the insolvency of the bankrupt, if its enforcement would work a preference. Provision is made for the prompt taking possession of the bankrupt's property, before adjudication, if necessary (section 69a [Comp. St. § 9653]). Every person is forbidden to receive any property after the filing of the petition, with intent to defeat the purposes of the act. These provisions, and others might be recited, show the policy and purpose of the Bankruptcy Act to hold the estate in the custody of the court for the benefit of creditors after the filing of the petition and until the question of adjudication is determined. To permit creditors to attach the bankrupt's property between the filing of the petition and the time of adjudication would be to encourage a race of diligence to defeat the purposes of the act and prevent the equal distribution of the estate among all creditors of the same class which is the policy of the law. The filing of the petition asserts the jurisdiction of the federal court, the issuing of its process brings the defendant into court, the selection of the trustee is to follow upon the adjudication, and thereupon the estate belonging to the bankrupt, held by him or for him, vests in the trustee. Pending the proceedings the law holds the property to abide the decision of the court upon the question of adjudication as effectively as if an attachment had been issued, and prevents creditors from defeating the purposes of the law by bringing separate attachment suits which would virtually amount to preferences in favor of such creditors. See in this connection the well-considered cases of State Bank v. Cox (C. C. A. 7th Cir.) 143 F. 91 [74 C. C. A. 285] 16 Am. Bankr. Rep. 32; Board of County Commissioners v. Hurley (C. C. A. 8th Cir.) 169 F. 92, 94 [94 C. C. A. 362] 22 Am. Bankr. Rep. 209. * * * As we have seen, the property to be administered in the bankruptcy court is that which belonged to the bankrupt at the filing of the petition, and then subject to his debts."

See, also, White v. Stump (U. S. Supreme Court, November, 1924) 266 U. S. 310, 45 S. Ct. 103, 69 L. Ed. 301, 5 Am. Bankr. Rep. (N. S.) 1.

The charge is not a tax on property, but was imposed upon the corporation for the privilege of exercising its franchise in a corporate capacity. People ex rel. United States Aluminum Printing Plate Co. v. Knight, 174 N. Y. 475, 478, 67 N. E. 65, 63 L. R. A. 87; Tax Law, § 209. It was assessed for the year beginning November 1, 1920, and was payable in advance on that date. Tax Law, § 209. It became a lien against the real and personal property held by the corporation on November 1, 1920. Tax Law, § 219-c.

In my opinion the lien of the tax attached, not to the estate in bankruptcy, but to the property, if any, acquired by the bankrupt subsequent to the filing of the petition. Had the tax in question been in existence at the commencement of the proceeding, it would have been entitled to prior payment by the trustee from the estate in bankruptcy, but it did not come into being until more than three months thereafter.

The line of cleavage is the date of the filing of the petition. "We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankrupt estate as of the time at which the petition was filed, and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition." Everett v. Judson, 228 U. S. 474, 479, 33 S. Ct. 568, 569 (57 L. Ed. 927, 46 L. R. A. [N. S.] 154, 30 Am. Bankr. Rep. 1. See, also, Matter of First National Bank v. Aultman, Miller & Co., 12 Am. Bankr. Rep. 12.

In the stipulation filed with the referee in

May, 1925, referred to supra, reference is made to the trustee carrying on the business until June, 1921, pursuant to an order of the bankruptcy court. In doing so, in my opinion, the trustee was carrying out the order of the court for the benefit of the creditors existing at the commencement of the proceeding, and acting for them and the court as liquidating officer.

The trustee was not exercising the bankrupt corporation's franchise. That did not pass as part of the bankrupt's estate, but remained with the stockholders, whose rights therein were not affected by the proceeding, except as to the property which passed into the control of the court at the date of the filing of the petition. See Memphis, etc., R. Co. v. Commissioners, 112 U. S. 609, 5 S. Ct. 299, 28 L. Ed. 831; People ex rel. Schurz v. Cook, 110 N. Y. 443, 18 N. E. 113; In re Imperial Brewing Co. (D. C.) 143 F. 579, 16 Am. Bankr. Rep. 110; Theobald-Jansen Electric Co. v. Harry I. Wood Electric Co. (C. C. A.) 285 F. 29. Entertaining these views, I am of the opinion that his tax claim was not one legally due and owing by the bankrupt at the date of the filing of the petition in bankruptcy, and therefore not payable by the trustee from the estate in bankruptcy.

The trustee in bankruptcy is entitled to an order expunging the claim as filed. An order may be settled on notice.

Memhard & Trosk, of New York City, (Allen H. Memhard, of New York City, of counsel), for trustee.

Albert Ottinger, Atty. Gen. (William Matthews and Clayton T. A. French, Deputy Attys. Gen., of counsel), for claimant.

AUGUSTUS N. HAND, District Judge. This is a petition of the state of New York for a review of the order of Referee Lyttle, granting the trustee's motion to dismiss and expunge the claim filed on behalf of the state of New York for a franchise tax assessed against the bankrupt corporation under the Tax Law. An involuntary petition was filed on July 29, 1920, and the adjudication of bankruptcy had on November 4, 1920. A receiver was appointed on the filing of the petition, who was subsequently elected trustee, and both officers conducted the business in liquidating merchandise on hand.

Section 209 of the New York Tax Law (Consol. Laws, c. 60) reads as follows:

"Sec. 209. *Franchise Tax on Corporations Based on Net Income.* For the privilege of exercising its franchise in this state in a corporate or organized capacity every domestic corporation * * * shall annually pay in advance for the year beginning November first next succeeding the first day of July in each and every year an annual franchise tax, to be computed by the tax commission upon the basis of its entire net income, as defined in subdivision three of section 209 of the Tax Law, for its fiscal or the calendar year next preceding, as hereinafter provided, which entire net income is presumably the same as the entire net income which such corporation is required to report to the United States. * * * *"

The tax was to be "computed." In order that the tax commission could compute the tax, section 211 provided that every corporation taxable under article 9-a "shall annually on or before July first, or within thirty days after the making of its report of entire net income to the United States Treasury Department for any fiscal or calendar year, preceding said first day of July, transmit to the tax commission a report in the form prescribed by the tax commission, specifying," etc.

Section 214 provides elaborately for the method of computing the tax, and section 215 provides that: "The tax imposed by this article shall be at the rate of four and one-half per centum of the entire net income of the corporation, * * * determined as provided by this article."

Section 219-a provided that: "The tax commission shall audit and state the account of each corporation known to be liable to a tax under this article, as herein before provided, and shall compute the tax thereon and proceed to collect the same. * * * *"

Section 219-b requires that "notice of all tax assessment" shall be sent by mail to the post office address given in the report. Section 219-c provides when the tax shall be paid.

"*When Tax Payable.* The tax hereby imposed shall be paid to the state tax commission on or before the first day of January of each year, or within thirty days after notice of the tax has been given as provided in section 219-b of this chapter if such notice is given subsequent to the first day of December of the year for which such tax is imposed. * * * *"

The corporation filed its report before July 1, 1920, as required by law, upon which a tax was thereafter fixed in the sum of $2,884.82.

[1] No question is made as to the correctness of this sum as a tax against the corporation for exercising its franchise, but the referee

expunged it as a claim against the estate in bankruptcy upon the ground that the petition in bankruptcy was filed July 29, 1920, and that then the estate "actually or potentially passed into the control of the bankruptcy court," while the tax assessed was by statute for the year beginning November 1, 1920, and had therefore not become due or payable at the time when the bankruptcy court obtained jurisdiction of the assets. Judge Mack rendered a decision in the case of In re Warner & Pepper, Inc., Bankrupt, in July, 1925, without, however, filing any opinion, and reached the same result as the referee in the case at bar.

Referee Olney came to a different conclusion in the Case of Chinese Fur Importers, Inc., decided August 3, 1925. He relied upon the decisions of the Supreme Court in New Jersey v. Anderson, 203 U. S. 483, 27 S. Ct. 137, 51 L. Ed. 284, and New York v. Jersawit, 263 U. S. 493, 44 S. Ct. 167, 68 L. Ed. 405. In the former case, however, the tax in question was for a year which had already commenced at the time the petition in bankruptcy was filed, and in the latter case the petition was filed December 22, 1920, and the claim of the state for its franchise tax was for the year commencing November 1, 1920, and ending October 31, 1921. In each case the situation differed from the present because the period which the tax covered had already commenced to run when the petition was filed. Here it had neither commenced to run, nor is there any evidence that the tax had even been computed by the state authorities at the time of the filing of the petition. To hold that the tax was "legally due and owing," so as to become payable under section 64a of the Bankruptcy Act, where the tax had not been assessed, and where the period had not begun to run for which the corporation was taxed for exercising its franchise, is going beyond the facts of any adjudicated case, and is not called for by the text of the New York statutes, and is not a reasonable interpretation, in view of the strict construction applicable to tax acts.

[2] It is further contended that the tax ought to be imposed, irrespective of the fact that the petition was filed before the tax is shown either to have been assessed or to have become due and owing, because the trustee conducted the business under orders of this court for a short time subsequent to November 1, 1920, when the period covered by the franchise tax began to run. The tax was not upon the conduct of the business liquidated under the orders of this court, but upon the exercise of its franchise by the corporation.

The adjudication against the bankrupt did not terminate its corporate existence, but resulted in the appropriation of a fund by this court *at the time when the petition was filed*. Theobald-Jansen Electric Co. v. Harry I. Wood Electric Co. (C. C. A.) 285 F. 29; White v. Stump, 266 U. S. 310, 45 S. Ct. 103, 69 L. Ed. 301, 5 Am. Bankr. Rep. (N. S.) 1; Bailey v. Baker Ice Co., 239 U. S. at page 275, 36 S. Ct. 50, 60 L. Ed. 275; Everett v. Judson, 228 U. S. 474, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; Acme Harvester v. Beekman Lumber Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208. The tax may be due from the corporation, but is not a claim against the assets in the custody of the bankruptcy court, because it has accrued since the petition was filed, and is not an obligation incurred by the receiver or trustee.

[3] In the case of In re Continental Candy Co. (D. C.) 291 F. 773, Judge Learned Hand expressed a doubt as to whether a receiver would not be liable for such a tax as the one in question by reason of the fact that his rights were those with which the corporation was vested, and must therefore be subject to the same liabilities. The point he decided was that a trustee would not be liable to a franchise tax imposed after he was appointed. I would treat a receiver in bankruptcy, where an adjudication follows, as subject to the same liabilities as a trustee. By the filing of the petition the court becomes possessed of the assets, and the title of the trustee while his possession is deferred related back to the filing of the petition. While the doctrine of relation is a legal fiction, invented to produce certain results, I think it is very real as fixing the title in the trustee. There may be said to have been in contemplation of law a complete ownership of the assets by the trustee from the date of the filing of the petition, with which no taxing power of the state over the corporate franchise could interfere.

The recent opinion of Judge Knox in the case of New York Trust Co. v. Island Oil & Transport Corp. et al. (D. C.) 7 F.(2d) 416, dated August 20, 1925, involved the liability of equity receivers to pay franchise taxes. He differs from the result reached by the majority of the court in Franklin Trust Co. v. State of New Jersey, 181 F. 769, 104 C. C. A. 629. The property was not taken permanently from the corporation, as in the case of any adjudication in bankruptcy, but the title remained in it, though in the custody of a receiver. It seems difficult to reach any other conclusion than Judge Knox reached in case of an equity receivership, but the rule he ap-

plied does not necessarily touch the facts of this case.

For the foregoing reasons, the order of the referee is affirmed.