76 P.2d 1139

LOWDEN et al. v. STATE CORPORATION COMMISSION.

No. 4214.

Supreme Court of New Mexico.

Feb. 18, 1938.

Frank H. Patton, Atty. Gen., and J. R. Modrall and Richard E. Manson, Assts. Atty. Gen., for appellant.

E. R. Wright and Donovan N. Hoover, both of Santa Fe, and W. F. Peter, of Chicago, Ill., for appellees.

## PER CURIAM.

Upon rehearing the original opinion is withdrawn and the following substituted.

## BRICE, Justice.

This is a companion case to Southern Pacific Co. v. State Corporation Commission, 41 N.M. 556, 72 P.2d 15, recently decided by this court. The questions involved are identical except in this case an additional one must be answered.

Accordingly, it is held that the tax assessed by virtue of chapter 116, N.M.L. 1935, is valid and properly assessed against appellee, and should be paid if trustees in bankruptcy, appointed by a federal District Court under section 77 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 205, providing a means for the rehabilitation of railroad corporations, are liable therefor.

The tax in question is, "An Annual Franchise Tax on Domestic and Foreign Corporations for Profit Doing Business in This State, for the Privilege of Carrying on, Doing Business, or the Continuance of its Charter Within This State," as expressed in the title of the act, and is, "at the rate of One ($1.00) Dollar for each One Thousand ($1,000.00) Dollars, or fraction thereof, of the par value of that proportion of its authorized and issued capital stock represented by its property and business in this state." The tax was duly assessed against appellees and the railway company, subsequent to the filing of the bankruptcy petition.

The Chicago Rock Island & Pacific Company was granted the same privileges and franchises when it was authorized to do business in New Mexico, as though it had been incorporated under this state's laws, section 32-203, N.M.Comp.Sts.1929; among which was the right to borrow money and mortgage and pledge its property and corporate franchises as security for the payment thereof, sections 116-202 and 116-702, N.M.Comp.Sts.1929; and purchasers at foreclosure sale under such mortgages may acquire such privileges and franchises with all the rights of use and enjoyment of the mortgagor, sections 116-501, 116-502, N.M.Comp.Sts.1929, and may sell such property and such franchises so purchased to any corporation of any state or territory.

Broad powers and valuable franchises are granted by chapter 116 of N.M.Comp. Sts.1929, to railway corporations, including:

"Ninth. To enter into any obligations or contracts necessary or convenient to the transaction of its ordinary affairs, or for carrying out the purposes of the corporation; and generally, such corporation shall have and possess, for the purpose of construction, maintaining and operating its railroads and telegraph lines, and carrying on its business, all the rights, powers and

privileges which are enjoyed by natural persons." Section 116-201 (Ninth), N.M. Comp.Sts.1929.

"XII. Every railroad corporation, in addition to the foregoing, shall have such further powers as may be necessary or convenient to enable it to exercise and enjoy, fully and completely, all the powers granted by this chapter; and, generally all such powers as are usually conferred upon, required and exercised by railroad corporations; and in the exercise of its powers and every thereof, shall have and enjoy all the rights, privileges, abilities and capacities which are enjoyed by natural persons." Section 116-202, Nineteenth (12), N.M.Comp.Sts.1929.

The act provides that these privileges and franchises shall be canceled if the tax is not paid within a time specified therein. Section 7 of chapter 116, L.1935.

It was held in Re Myley Electrical Supply Co., Inc., D.C., 291 F. 775, and in Re Century Silk Mills, Inc., D.C., 12 F.2d 292, that trustees in general bankruptcy proceedings are not liable for a franchise tax upon the theory that the trustee was not exercising the bankrupt's franchise. We do not find that the question has been decided by the Supreme Court of the United States.

The character of the tax here involved is plainly expressed in the title of the act, which we have quoted.

It is a privilege tax, not upon the right to be a corporation or to exist, and not on the actual doing of business, but for the right or privilege to do the business and exercise the franchise granted by its permit to do business in this state, whether it transacts business or not; that being a matter about which the state is not concerned in assessing the tax.

It is not unlike the tax imposed by a statute of the state of Michigan and construed in Re Detroit Properties Corporation et al., 254 Mich. 523, 236 N.W. 850, 851, in which it is said:

"The privilege fee is an excise tax, not upon the right to be a corporation, but upon the activities of the corporation in the exercise of its corporate franchise, or, as it is sometimes expressed, upon the franchise 'to do,' not upon the franchise 'to be.' * * Actual transaction of business by a domestic corporation is not a condition of the tax. It is imposed on the right to transact."

This construction of the statute was followed in People of State of Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 515, 76 L.Ed. 1136.

But assuming that the trustees are not operating the bankrupt's property under its franchises, but only by virtue of the supreme law of the land, a subject hereafter to be considered; they have taken possession of all the property of the bankrupt; and, constructively, its franchises, with the power to sell them under foreclosure and to receive the proceeds of such sale. In the meantime the trustee is operating the railroad exactly as though it was exercising

the franchises granted to the bankrupt by the state, and all assets of the corporation with which the tax could be paid is held by the trustees. In case of a sale under a mortgage, the franchise will pass to a purchaser. New Orleans, etc., Ry. Co. v. Delamore, 114 U.S. 501, 5 S.Ct. 1009, 29 L.Ed. 244.

Appellees agree that the corporation is liable to the tax notwithstanding bankruptcy proceedings, and must pay it if the title to the corporation's property is retransferred. They agreed in the oral argument on rehearing that if the property of a bankrupt is operated under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, with title in the bankrupt, the bankrupt estate is liable to the tax; but if operated by trustees, it was contended they are not so liable, though that section, as did section 77 originally, 11 U.S.C.A. § 205 note, provides for the operation of the bankrupt's estate either with title in the bankrupt or in a trustee.

In other words, the liability to the tax, as appellees contend, depends upon the depository of title selected by the bankruptcy court for its convenience in administering the rehabilitation proceedings, rather than upon any just grounds of exemption from taxation; that the rule laid down in Re Myley Electrical Supply Co., Inc., supra, and in Re Century Silk Mills, Inc., supra, regarding general bankruptcy proceedings should apply to proceedings under section 77, 11 U.S.C.A. § 205.

It is contended, however, by appellant that proceedings under section 77 of the Bankruptcy Act differ materially in purpose and effect from those of the general bankruptcy statutes, 11 U.S.C.A. § 1 et seq.; that its primary object is not to liquidate an estate and pay or settle its indebtedness, but to rehabilitate and continue the existence of the corporation as a going concern.

The scope and purpose of section 77 of the Bankruptcy Act are the same as those of section 77B; except the latter applies to the rehabilitation of corporations other than railway. Grand Boulevard Investment Co. v. Strauss, 8 Cir., 78 F.2d 180. In regard to section 77B, 11 U.S.C.A. § 207, it was said in Re Dutch Woodcraft Shops, D.C., 14 F.Supp. 467, 469, that "obviously, the essential purpose of section 77B is to preserve and continue a going business."

In Re Sterba, 7 Cir., 74 F.2d 413, 417, the court stated:

"The proceedings under sections 74, 75, 76, and 77 [see 11 U.S.C.A. §§ 202-205], are not the equivalent of equity receivership proceedings. They contemplate a feasible plan, promptly presented, whereby the overburdened debtor may, through creditors' cooperation (though unanimous creditor action is unnecessary) secure a scaling of debt or interest, or an extension of due date of debts."

In Troutman et al. v. Compton, 2 Cir., 74 F.2d 734, 736, the court said:

"The apparent purpose of section 77B of the Bankruptcy Act (11 U.S.C.A. § 207), which provides for proceedings in the reorganization of a corporation and its subsidiaries, is to avoid immediate liquidation

of the properties involved, and to rehabilitate rather than liquidate. In equity receiverships for conservation of assets, as heretofore known, ancillary receivers were appointed in the district, other than the domiciliary district, where the corporation had property to administer. Section 77B was planned to bring such proceedings within the paramount and exclusive jurisdiction of one bankruptcy court."

In Campbell v. Alleghany Corporation, 4 Cir., 75 F.2d 947, 949, the court said:

"This is an appeal from an order confirming a plan of reorganization of a debtor corporation under section 77B of the Bankruptcy Act [11 U.S.C.A. § 207]. * * * Prior to the passage of the act, neither proceedings under the old bankruptcy laws nor receiverships in equity furnished adequate relief for distressed corporate debtors, their creditors and stockholders, under modern conditions. * * * Proceedings under the old bankruptcy laws were inadequate because no machinery existed to scale down secured debts without a sale of the security. * * * Equity receiverships and foreclosures were inadequate for the same reason. * * * Only by the further exercise of the bankruptcy power of Congress could adequate relief be afforded these distressed corporate debtors and their creditors; and the act in question was passed for the purpose of affording this relief."

Originally section 77 did not require the appointment of trustees to take title to the property and operate the business of the corporation, but left it to the discretion of the court as to whether such title and operation should remain with the owner, or be transferred to trustees (Lansdown et al. v. Faris, Judge, 8 Cir., 66 F.2d 939), as now provided by section 77B, 11 U.S.C.A. § 207. But by subsequent amendments, it may now be mandatory upon the court to appoint a trustee or trustees.

The statute provides for a notice to mortgage trustees, creditors, and stockholders, "at which hearing or any adjournment thereof the judge shall appoint one or more trustees of the debtor's property. Such appointments shall become effective upon ratification thereof by the Commission without a hearing, unless the Commission shall deem a hearing necessary. * * * The trustee or trustees so appointed, upon filing such bond, shall have all the title and shall exercise, subject to the control of the judge and consistently with the provisions of this section, all of the powers of a trustee appointed pursuant to section 72 or any other section of this title, and, to the extent not inconsistent with this section, if authorized by the judge, the powers of a receiver in an equity proceeding, and, subject to the control of the judge and the jurisdiction of the Commission as provided by chapter 1 of Title 49 as on August 27, 1935, or thereafter amended, the power to operate the business of the debtor. Prior to the appointment of a trustee, the debtor on behalf of the court shall continue in the possession of the property and shall operate the business thereof during such period, and shall have all the title to the property and shall exercise all power consistent with the provisions of this

section, subject at all times to the control of the judge, and to such limitations, restrictions, terms, and conditions as he may from time to time impose and prescribe." Title 11 U.S.C.A. § 205(c)(1, 2).

In 1934 the Congress enacted a statute, the part of which material to this case is:

"Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, from and after June 18, 1934, be subject to all State and local taxes applicable to such business the same as if such business were conducted by an individual or corporation." Section 124a of title 28 U.S.C.A., Act June 18, 1934.

The Supreme Court of the United States has never held that a trustee in bankruptcy is not liable to a franchise tax; but did hold in Reinecke, Collector, v. Gardner, 277 U.S. 239, 48 S.Ct. 472, 473, 72 L.Ed. 866, that he is not liable to an excess profits tax under the provisions of section 212 of the War Revenue Act of Oct. 3, 1917, 40 Stat. 307; because levied against the corporation and not against the trustee in bankruptcy. The court stated:

"As under the Bankruptcy Act (11 U.S.C. A.) the entire property of the bankrupt vested in the trustee, the income in question was not the income of the bankrupt corporation but of the trustee, and was subject to income and excess profits tax only if the statutes authorized the assessment of the tax against him. The Revenue Act of [September 8,] 1916, c. 463, 39 Stat. 756, and the War Revenue Act of [October 3,] 1917, c. 63, 40 Stat. 300, imposed income and excess profits taxes on individuals, partnerships, and corporations, but neither in terms mentioned trustees in bankruptcy as taxable persons. But section 13(c) of the Act of 1916 required trustees in bankruptcy of corporations subject to the income tax to make returns of net income, and provided that 'any income tax due on the basis of such returns * * * shall be assessed and collected in the same manner as if assessed directly against the' corporation. * * * The case is different with respect to the excess profits tax. That tax was imposed by title 2 of the Act of 1917 on corporations, partnerships, and individuals engaged in trade or business. The title made no mention of executors, receivers, trustees or persons acting in a fiduciary capacity, and contained no language corresponding to the quoted provision of title 1, § 4, extending the additional income tax to 'the same incomes' taxed by section 10 of the Act of 1916. A tax imposed on corporations alone does not extend to a trustee in bankruptcy of a corporation."

Appellees agree that 28 U.S.C.A. § 124a, supra, applies to trustees in bankruptcy, but argue that as the New Mexico statute does not specifically provide that the franchise tax shall be paid by trustees in bankruptcy, that no act of Congress can confer upon the state the right to collect it from them; and cite in support of their contention Reinecke, Collector, v. Gardner, supra; United States v. Whitridge, 231 U.S. 144,

34 S.Ct. 24, 58 L.Ed. 159; Howe v. Atlantic, etc., Oil Co., D.C., 4 F.Supp. 162, reversed in Kansas City v. Johnson, 8 Cir., 70 F.2d 360; and Scott v. Western Pac. R. Co., 9 Cir., 246 F. 545, 548. From the last-cited case appellees quote the following:

"Our conclusion is that there are no clear and express words which provide for the imposition of the tax upon property held by receivers appointed by the court, and that, without certainty as to the meaning and scope of language imposing the tax, doubt must be resolved in favor of the receivers."

It is clear that if the state statute authorized the laying of the tax against trustees in bankruptcy, that the federal act in question would remove all impediments to its enforcement; but can the collection of such tax be enforced, in the absence of such state legislation?

Generally speaking, property in the custody and control of federal receivers and trustees is subject to taxation by state law as other property. Swarts v. Hammer, 194 U.S. 441, 24 S.Ct. 695, 48 L.Ed. 1060.

We are, of course, bound by the decision in the Reinecke Case. It applied to ordinary trustees in bankruptcy. To sustain appellant's contentions, we must find reasons in the difference in the status of the trustees appointed under section 77, and that of ordinary trustees in bankruptcy; and in the meaning of the statute of 1934, section 124a, Title 28 U.S.C.A., fixing liability to such trustees.

Bankruptcy proceedings under sections 77 and 77B of the Bankruptcy Act are entirely different from ordinary proceedings in bankruptcy. The latter deals with the property of the bankrupt with a view to liquidation and with the expectation that the title shall never return to the bankrupt. It is not concerned with the corporate existence of the bankrupt except incidentally in connection with the liquidation of the estate. On the other hand, bankruptcy proceedings under sections 77 and 77B are primarily for the purpose of rehabilitation. The title is taken in the name of the trustee (if a trustee is appointed) with the expectation that it, or a portion of it, will be returned to the bankrupt; and that the corporation will continue to exist. Its object is very similar to that of an equity receivership, though its procedure is much more efficient. Under section 77B the corporation may go through the proceedings of rehabilitation, holding title to the property and under its management. Surely under these circumstances the taxes would have to be paid.

As a necessary part of these proceedings, the corporate existence must not be destroyed.

Section 9 of the act is:

"Any corporation failing to make any report by this Act required within the time prescribed in any year shall be liable to a penalty of not less than one hundred nor more than one thousand dollars, to be recovered by suit brought in the name of the state, and if such corporation be a

corporation organized and existing under the laws of this State it shall thereupon be dissolved; or if said corporation be organized and existing under the laws of any other state or country, its permit to do business in this State shall thereupon be cancelled; but nothing herein contained shall prevent the collection of the tax, penalty and interest due by legal proceedings; and provided further that nothing in this Act shall be construed as authorizing a forfeiture of the right or privilege of engaging in interstate commerce." Section 9, c. 116, Laws 1935.

Counsel argue that the corporation owes this tax and will have to pay it when its property is returned to it, but that the trustees are not liable therefor. But in the meantime its permit to do business may be canceled for failure to pay the tax, because its funds are held by trustees. It is as essential to the rehabilitation of this corporation that this tax be paid as it is that the ordinary property tax should be paid. A franchise ordinarily is a valuable property right and its loss may be destructive of the intrastate rights and franchises of the corporation.

The fallacy of appellees' argument lies in the contention that section 124a, supra, does no more than remove any immunity to tax. The Congress has authority to require trustees and receivers in bankruptcy to pay the taxes of bankrupt corporations in pending proceedings to protect the property of the bankrupt, and has done so by the Act of June 18, 1934. Such liability may be created by the Congress, equally with that of liability for any other taxes of the corporation.

The appellees are trustees; they are agents appointed by a United States court; they are authorized by the court to conduct the business of the bankrupt railroad company; they do conduct the business. With these facts established, the statute provides that they are "subject to all State and local taxes applicable to such business the same as if such business were conducted by * * * [a] corporation." We take this to mean that if the bankrupt is an individual, trustees are required to pay taxes applicable to such business the same as if it were conducted by the bankrupt; in case the bankrupt is a corporation, trustees are subject to all taxes applicable to such business the same as if it were conducted by its former corporate owner. In other words, the intent of the statute is that trustees shall pay the taxes assessed and levied against the bankrupt corporation or its property, exactly as though it were being operated by the bankrupt. They are treated in that respect as trustees who represent corporations. Michigan v. Michigan Trust Co., supra.

It is stated in Re Preble Corporation, D. C., 15 F.Supp. 775, 776:

"A proper performance of the duty to protect the property intrusted to its agents by the court requires the payment of taxes. In this case taxes are a part of the necessary expense of carrying on the business.

"The trustee is subject to all state and local taxes which are applicable to the business which he conducts.'

" 'If the trustee fails to pay taxes in a proper case, although he has sufficient funds to do so, and thereby subjects the estate to interest and penalties, he will be surcharged to the extent of such interest and penalties.' Gerdes on Corporate Reorganizations, Vol. 1, § 400.

"Since the passage of the amendment to section 64, above referred to, Congress by Act of June 18, 1934 (28 U.S.C.A. § 124a), has made it still more clear that business conducted by Federal trustees is subject to all local taxes. 'Any receiver, liquidator, referee, trustee, or other officers or agents appointed by any United States court who is authorized by said court to conduct any business, or who does conduct any business, shall, from and after June 18, 1934, be subject to all State and local taxes applicable to such business the same as if such business was conducted by an individual or corporation.'

"By U.S.C.A. title 28, § 124, Federal receivers or managers of property are instructed, under heavy penalties for willful violation, to manage and operate the property according to the laws of the state 'in the same manner that the owner or possessor thereof would be bound to do if in possession.' "

This is the only case with the exception of In re Messenger's Merchants Lunch Rooms, Inc., 7 Cir., 85 F.2d 1002, 1004, that mentions section 124a, title 28 U.S.C.A. In the latter case the question was not an issue because apparently agreed to by the parties. It is not authority, and mentioned only because of the lack of federal court construction of the act in question. The facts are as follows:

An Illinois corporation was in bankruptcy. At the time it became a bankrupt it owed an occupation tax imposed "upon persons engaged in the business of selling tangible, personal property at retail," computed at the rate of 2 per cent. upon the gross receipts from sales. The claim was allowed by the District Court for all taxes accruing prior to filing the petition in bankruptcy on March 28, 1934, and disallowed as to taxes accruing from March 28, 1934, until June 18, 1934, the date on which section 124a of title 28 U.S.C.A., supra, became effective; and allowed for taxes accruing for all times subsequent. In other words, it was held (or agreed) that the trustee in bankruptcy was liable for the tax subsequent to filing the petition in bankruptcy because authorized by the federal statute, section 124a, supra, but not otherwise. It was not allowed for the time the corporation was in bankruptcy prior to the time the Act of June 18, 1934, became effective because trustees or receivers in bankruptcy were not specifically named in the taxing act. The court stated:

"Here the receivers were appointed under the Bankruptcy Act, not for the purpose of continuing the corporate life of the bankrupt, but as a step in the liquidation of the estate. Section 2 of the Bankruptcy Act

(11 U.S.C.A. § 11) provides that the court shall have jurisdiction to authorize the bankrupt's business to be conducted for limited periods. Such conduct is, obviously, to preserve the good will, until liquidation can be completed, and it is merely a step in the normal liquidation of assets. The act of Illinois fails to show affirmatively that it was intended to assess an occupational tax against a liquidating receiver, temporarily conducting the business until liquidation could be completed, and the District Court rightfully disallowed the claim for the period from the filing of the petition to June 18, 1934, when the later act of Congress was enacted."

The following comment on section 124a, supra, is found in Volume 3, Gerdes on Reorganizations, § 1181:

"The debtor is liable for all state and local taxes applicable to the business conducted by the trustee, just as if the business were being conducted by the debtor and as if no proceedings under section .77B were pending.

"If a tax on the privilege of doing business as a corporation is levied while the trustee is operating the debtor's business, it would seem that the trustee need not pay the tax. But if the franchise tax is imposed as a condition to continued corporate existence, and the trustee desires to maintain such corporate existence in order to transfer assets to the corporation after the reorganization is completed, the trustee should pay the tax."

The meager authority we have on the question supports appellant's contention that section 124a, 28 U.S.C.A., requires the trustees to pay the tax.

A debtor remaining in possession of the assets after filing a petition under section 77B, 11 U.S.C.A. § 207, is held to be analogous to that of a receiver in equity. In re Avorn Dress Co., Inc., 2 Cir., 78 F.2d 681.

Referring again to section 124a, 28 U.S.C. A., Act June 18, 1934, "Any * * * trustee * * * appointed by any United States court * * * shall * * * be subject to all State and local taxes applicable to such business," creates a liability to the trustee for any tax applicable to the business of operating the Chicago Rock Island & Pacific Railway property; it does not lay a tax against the trustee.

Webster's New International Dictionary gives as one of the definitions of "subject," "to expose; to make liable, with to."

"Again, in the interpretation of statutes, words in common use are to be construed in their natural, plain, and ordinary signification. 36 Cyc. 1114. The words 'subject to' are defined by lexicographers as meaning 'liable,' and the word 'liable' is defined as 'bound or obliged in law or equity; responsible; answerable.' Webster's New International Dictionary; Century Dictionary. Paraphrasing the last clause of the statute according to the natural and ordinary signification or meaning ascribed to the words used therein, it would read, 'but

the devises and legacies therein contained shall pass and take effect, answerable for, and bound in law or equity with, such charge or incumbrance.' " Hannibal Trust Co. v. Elzea, 315 Mo. 485, 286 S.W. 371, 377.

The language then means that any trustee appointed by any United States court, etc., shall be liable to all state and local taxes applicable to such business. No reference is made to any contingency or proviso, such as upon the contingency that the tax is assessed against the trustees, or provided a state law lays a tax against such trustees. We do not hold that the Congress may lay a tax for the benefit of a state. This, of course, cannot be done. The Congress, in effect, said: "If the bankrupt whose business you are conducting, but for bankruptcy, would be liable to a state or local tax, you, as trustees, must pay it." This does not lay a tax, but creates a liability. The distinction between public corporations operating through franchises granted by a state and those of mere private corporations is recognized by the courts. Cf. Mich. Trust Co. v. People of State of Michigan, 6 Cir., 52 F.2d 842, and other decisions cited in the concurring opinion of Mr. Justice Sadler. We do not go to the length of holding with Mr. Justice Sadler that the operation of the railway property by the trustees in bankruptcy must necessarily be under the franchise of the state. We need not decide the question. We may assume that the bankruptcy court, by virtue of the supreme law of the land, is authorized to carry on the intrastate business under the authority of Congress alone, even though the corporation's franchises are canceled. But the property, when returned to the bankrupt, free from control of the bankruptcy court, would have to be operated under state franchises or not at all. The bankruptcy court cannot furnish a franchise to the corporation, though its property was once operated under state franchises that had been canceled because of the failure to pay a franchise tax.

But whether we have correctly construed section 124a, 28 U.S.C.A., supra, the tax is administration expense when viewed in its true light. The words of Mr. Justice Cardozo, in Michigan v. Michigan Trust Co., supra, so perfectly fit the case that we quote them in closing this opinion:

"Viewing the receivership in its true light as one, not to wind up the corporation, but to foster the assets, we think the annual taxes accruing while the receiver was in charge must be deemed expenses of administration and therefore charges to be satisfied in preference to the claims of general creditors. * * * These privilege fees were charges of the nature there described. Taxes owing to the government, whether due at the beginning of a receivership or subsequently accruing, are the price that business has to pay for protection and security. * * * The privilege fees, being taxes, were expenses of administration within the very terms of the order, but in addition they were taxes of such an order that the corporation by failing to pay them became subject, if the state so elected, to a forfeiture of its franchise."

These franchises are held by the trustees, and are subject to the orders of the bankruptcy court. It is not contended that they are not worth the tax.

We hold that trustees in bankruptcy, appointed under section 77 of the Bankruptcy Act, section 205, title 11, U.S.C.A., who conduct the business of a corporation in bankruptcy during rehabilitation, are liable to the franchise tax assessed against them or the corporation under chapter 116, N.M.L.1935.

The case will be reversed and remanded with instructions to the district court to sustain the demurrer to appellees' petition for certiorari and proceed with the disposition of the case not inconsistent herewith.

It is so ordered.

BICKLEY, J., concurs.

HUDSPETH, C. J., did not participate.

SADLER, Justice (concurring specially).

I concur in the result reached by Mr. Justice BRICE, whose opinion will be hereinafter referred to as the main opinion. However, I prefer to rest my conclusion that the trustees are liable upon the fact that they are trustees of a public utility corporation, a railroad company, and, in carrying on the intrastate business of the corporation in New Mexico, necessarily exercise the corporate franchise for the privilege of doing which the tax in question is imposed.

A true distinction, recognized in the decisions, exists between the status of the receiver of the ordinary private business or mercantile corporation and the receiver of a public utility corporation. The former conducts a business not affected with a public interest. As to him, it very well may be said that he requires no grant of a privilege from the state to conduct a business upon which any person or corporation may embark without a franchise. But this is not true of the public utility corporation. Certain powers exercised by it must come from the state. They are the subject of legislative delegation only. When such a corporation is in the hands of a receiver or trustee, with or without title, who conducts the ordinary business of the corporation as a going concern, the receiver necessarily draws upon the corporate franchise for the exercise of those powers which the court appointing him is powerless to bestow.

In an article appearing in 30 Mich.Law Review (part 2) 1094, entitled, "Liability for Corporate Franchise Taxes Accruing After Appointment," the author states:

"Another group of cases in which the general principle of receiver's liability for franchise taxes is laid down is one involving the public utility receivership. A distinction has been drawn here by some cases which, on the other hand, has been repudiated by other courts. Those who contend that the receiver of the ordinary mercantile corporation does not exercise the corporate franchise but is acting solely

under the powers of the court are often willing to concede that a different situation exists with regard to the public utility. The utility possesses certain powers which can be wielded under sanction of the sovereign. Such powers cannot be conferred upon a receiver by a court; they are the subject of legislative delegation. Consequently, the receiver who operates a railroad or power company is acting, not only under the aegis of the court, but is employing the corporate franchise. The public utility cases seem capable of differentiation on this basis."

See, also, a subsequent article by the same author in 30 Mich.Law Review (part 2) 1346, following decision in the case of Michigan v. Michigan Trust Co., 286 U. S. 334, 52 S.Ct. 512, 76 L.Ed. 1136.

The distinction mentioned was recognized by the Circuit Court of Appeals for the Sixth circuit in the case just cited when it was before that court. See Michigan Trust Co. v. People of State of Michigan, 52 F.2d 842, 843. While the decision of the Circuit Court of Appeals was reversed by the United States Supreme Court, in the case cited supra, the reversal was upon grounds not affecting the soundness of its observations upon this distinction. The Circuit Court of Appeals, citing authority, said:

"The suggested distinction is well enough in the case of a public utility. 'No private person can establish a public highway, or a public ferry, or railroad, or charge tolls for the use of the same, without authority from the legislature, direct or derived.' California v. Pacific R. Co., 127 U.S. 1, 40, 8 S.Ct. 1073, 1081, 32 L.Ed. 150. Such a franchise is not included in the simple grant under general laws of the right to be a corporation. It is separate and apart from the franchise 'to be.' Thus, when a receiver is appointed for such public utility, and such receiver proceeds to operate the business, in a very accurate sense he is using the franchise 'to do' formerly exercised by the corporation. This is quite plainly suggested by some of the decisions involving railroad or other public utility receiverships. Collector of Taxes v. Bay State St. Ry., 234 Mass. 336, 125 N.E. 614; N. Y. Terminal Co. v. Gaus, 204 N.Y. 512, 516, 98 N.E. 11; Armstrong, Receiver, v. Emmerson, Sec. of State, 300 Ill. 54, 132 N.E. 768, 18 A.L.R. 693; Philadelphia & R. R. Co. v. Commonwealth, 104 Pa. 80. It is the proper ground we think, upon which other similar cases should have been decided, although both groups are often rather loosely cited as authority for the proposition that a franchise tax is payable wherever the receiver continues to operate the business, regardless of its nature. Compare Bright v. Arkansas, 249 F. 950 (C.C.A.8); State v. Bradley, 207 Ala. 677, 93 So. 595, 26 A.L.R. 421; Central Trust Co. v. New York, C. & N. R. Co., 110 N. Y. 250, 18 N.E. 92, 1 L.R.A. 260."

See, also, In re George Mather's Sons Co., 52 N.J.Eq. 607, 30 A. 321; People ex rel. Joline v. Williams, 200 N.Y. 528, 94 N. E. 1097; State ex rel. Dawson v. Sessions, 95 Kan. 272, 147 P. 789; and case notes, L.R.A.1915E, 211, 220; 18 A.L.R. 700.

Apparently, only a few states have corporation franchise tax acts specifying as to liability or nonliability of corporate receivers. As to the meaning of statutes silent on the subject, the author of the article in 30 Mich.Law Rev. (part 2) 1094, says:

"Statutes imposing the franchise tax on corporations have generally failed to include or exempt corporate receivers specifically, raising a perplexing problem as to legislative intent. *Logically, if a receiver, in the course of his duties, can be said to be exercising the corporate franchise, he should be liable for the tax imposed upon its exercise.* That is the test generally adopted by the courts, but its application has resulted in a wide divergence of views as to whether a receiver exercises the corporate franchise at any time and if so, under what circumstances. It is conceded that, as to all franchise taxes accruing prior to appointment, the assets in the receiver's hands are charged with their payment. * * *" (Italics supplied.)

"Ohio and Arkansas have statutes specifically holding the receiver responsible if he continues the corporate business, although decisions in these states have proceeded to find liability or its absence on general principles, without reference to the particular wording of the statutes."

The true test of liability seems to be whether the receiver in conducting the affairs of the corporation is compelled to draw upon the corporate franchise. If so, he is liable; otherwise not. In the case of a purely private corporation, the receiver may ignore the corporate franchise and operate independently of it. But how he may do so in the case of a public utility corporation possessing certain essential powers which may be delegated by the Legislature alone, I am unable to see. The business of a common carrier is inherently of a public nature. A franchise to conduct it must come from the Legislature. As I view it, the trustees in the case at bar, as to the intrastate business of the corporation, necessarily conduct it by virtue of the corporate franchise, or they are without legislative authority to conduct it at all.

This conclusion satisfies me of the trustees' liability. If, as trustees in bankruptcy, they would possess immunity under this view of their liability, such immunity is lifted by section 124a of title 28 U.S. C.A., Act June 18, 1934, quoted in the main opinion. Construing section 124a as removing any immunity, gives it, in my opinion all the force to which it is entitled. The question of liability to the tax depends solely upon a construction of our own statute.

"The tax, if there was any, could have no origin independent of the provisions of the statute, and any decision upholding or annulling it is one involving inescapably a construction of the statute." Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 515, 76 L.Ed. 1136.

I am unable to give to the federal statute, section 124a of title 28 U.S.C.A., Act June 18, 1934, the effect accorded it in the main opinion. If I could not read liability

of the trustees to this tax from our own statute, I should be compelled to conclude there was none. For I see in the federal statute no command or direction to the trustees to pay a tax not imposed by the state or local jurisdiction. It merely lifts the bar to enforcement of a tax otherwise applicable to the business (or the conduct thereof) of the individual or corporation for whom the trustees are appointed.

In the instant case, I find applicable a franchise tax for doing the intrastate business of a common carrier. The trustees, in carrying on that business, exercise the corporate franchise. In doing the very thing taxed, they become liable for the tax. The federal statute renders them "subject to" the tax thus imposed by the state. It can do no more because Congress is without power to lay a tax in New Mexico or to declare the conditions under which the taxpayer by his own acts will incur liability therefor.

The case, In re Messenger's Merchants Lunch Rooms, Inc., 7 Cir., 85 F.2d 1002, while mentioning section 124a of title 28 U.S.C.A., Act of June 18, 1934, makes no attempt to construe the same for the simple reason that the court was not called upon to do so. Liability after June 18, 1934, for the Illinois privilege tax involved was accepted below by the trustees as appears from copies of the transcript and briefs in the Messenger Case furnished us on re-hearing by the appellees here. The state appealed, protesting disallowance of the tax for a certain period antedating June 18, 1934. The trustees in bankruptcy who alone might have objected to allowance of the tax after June 18, 1934, effective date of said section 124a, took no cross-appeal. In fact, the allowance of the tax after June 18, 1934, seems to have been acquiesced in by the trustees throughout the proceeding. Hence, the court was not called upon to determine a matter not presented to it. The carrying forward into the decree of something not objected to by the trustees reflects no view of the court upon the effect of the statute.

Whether the analogy between proceedings under sections 77 and 77B of the Bankruptcy Act, as amended, 11 U.S.C.A. §§ 205, 207, and equity receiverships is strong enough to support liability of the trustees to the tax is debatable. I express no opinion. In equity receiverships, title remains in the corporation and liability of the receiver seems to be predicated on the theory of agency. In the case at bar title is divested out of the corporation and vested in the trustees. Agency is unessential to my theory of liability to the tax for at bottom it is not so much a tax on a particular kind of person, natural or artificial, as it is a tax upon either or both for the doing of the thing taxed, viz., exercising the corporate franchise.

In order to confine application of this tax to a corporation, we must impute paramountcy in the legislative mind to the type of *person,* whether corporate or natural, doing the thing taxed, rather than to the *thing done.* When we recognize that it is only the doing of the thing taxed that creates a liability and produces revenue, it

is not difficult to answer which was predominant in the legislative mind, viz., the type of person exercising the corporate franchise or its exercise.

We ask ourselves the question: Is it a tax on corporations? This calls for a yes and no answer. Yes, when they do the thing taxed; i. e., enjoy the privilege taxed. No, when they do not. They are taxed only provisionally. So, it is not a tax on corporations *as such*. Neither is it a tax *on* trustees. Nevertheless, when they supersede the corporation in an exercise of the corporate franchise, they incur the tax in spite of the fact they are not a corporation, just as the corporation escapes the tax by refraining from doing the thing taxed, even though it is a corporation.

It is contended by appellees that the failure of the framers of the act specifically to relate it to trustees and receivers is decisive of a legislative intent to exclude them. They are able to draw high authority to their support. United States v. Whitridge, 231 U.S. 144, 34 S.Ct. 24, 58 L.Ed. 159; Reinecke, Collector, v. Gardner, 277 U.S. 239, 48 S.Ct. 472, 72 L.Ed. 866. However, in the latter case the court was dealing with an income tax rather than a tax levied upon the exercise of a privilege "to do." But when the true nature of the tax is perceived as one levied upon the exercise of a corporate franchise, rather than solely one upon the *corporate* exercise of a corporate franchise, the mere omission of trustees or receivers in name is not decisive of intent.

Indeed, this omission is quite understandable if we take a practical view of the matter. In laying the tax upon an exercise of the corporate franchise, it was perfectly natural that the Legislature should think of its exercise by the corporation itself. Almost invariably, it is so exercised. Fundamentally, however, being a tax upon the exercise of a corporate franchise, are we justified in declaring it the legislative intent that one enjoying the privilege of its exercise should go untaxed in the rare instances when, as in the case at bar, it is exercised by another than the corporation itself? I do not think so. Those found doing the thing taxed must pay the tax. Such, in my opinion, was the intention of the Legislature. It affords no proof that a given application of a tax measure is beyond legislative intent because perchance unforeseen, if intent gleaned from the act as a whole fairly points to its inclusion.

Referring, undoubtedly, to the Whitridge Case, supra, mentioned later in his note, the author of the annotation in 18 A.L.R. 700, said:

"The United States Supreme Court, while stating that the statute involved did not impose a tax upon corporate franchises as such, takes the view that a corporation carried on by receivers is not itself operating anything, while the courts of New York and of several other jurisdictions, in effect, consider that the operation by the receiver is a use of the franchise."

It will thus be seen that I disagree with the main opinion in its conclusion that this is a tax on the right to do business whether any business is transacted or not. In my view, the tax is essentially on the enjoyment of the privilege, the exercise of the corporate franchise, rather than upon the mere privilege itself. The correctness of this view is demonstrated by an application of the formula for measuring the tax recognized in Southern Pacific Co. v. State Corporation Commission, 41 N.M. 556, 72 P.2d 15. That formula presupposes the doing of business. In this connection, I understand appellees' position to be that the corporation is not liable because it has done no business and the trustees are exempt because not within the purview of the act. I agree with the first but not the second contention.

It is suggested that under its constitutional power to establish uniform laws on the subject of bankruptcy throughout the United States, Congress has supervening authority over the states; that regardless of state authority otherwise existing to require a legislative grant as a condition to conducting within the state the business of a common carrier or other public utility, here is one instance where it may not do so because Congress is moving under its bankruptcy powers.

There are two answers to the suggestion, either of which is sufficient. If the supremacy of the Congress be conceded; if it could, through the federal bankruptcy courts, clothe the trustees with power to carry on in New Mexico the public business of a common carrier in disregard of the state's requirement of a franchise tax for the privilege of so doing, nevertheless, by section 124a of title 28, U.S.C.A., supra, it has waived in favor of the state the full exercise of such power in the instant matter. We are here concerned not with what Congress could do but with what it has done.

The second answer is that the Congress has no such power as that asserted for it. It may not, under the guise of enacting uniform bankruptcy laws, destroy or weaken the principle of dual sovereignty between the states and the Union, inhering in the Constitution. That such supremacy in Congress does not exist is recognized, in effect, by a recent decision of our highest court. Ashton v. Cameron County Water Dist., 298 U.S. 513, 56 S.Ct. 892, 80 L.Ed. 1309. Proceeding under its constitutional power to establish uniform bankruptcy laws, the Congress enacted a statute permitting local governmental units to become voluntary bankrupts. The statute was held to be a violation of state sovereignty, the court's conclusion being epitomized in the syllabus as follows:

"The sovereignty of the state essential to its proper functioning under the Federal Constitution cannot be surrendered; it cannot be taken away by any form of legislation."

State sovereignty is taken away by section 77 of the Bankruptcy Act if such act operates to prevent or restrain the states in the exercise of their police power in regulating public utility corporations. It can have

no such effect. Cf. Barbier v. Connolly, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923; In re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519; Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384; Hopkins Federal Savings & Loan Ass'n v. Cleary, 296 U.S. 315, 56 S.Ct. 235, 80 L.Ed. 251, 100 A.L.R. 1403.

Hence, the right of these trustees (appellees here) to do an intrastate business in New Mexico flows from the corporate franchise of the Chicago, Rock Island & Pacific Company or it does not exist. It is not derived from their status as trustees in bankruptcy. The court appointing them was powerless to confer it. The right to conduct the business of a common carrier must come from the Legislature "direct or derived." California v. Central Pacific R. Co., 127 U.S. 1, 8 S.Ct. 1073, 32 L. Ed. 150. The receiver of a corporation, not itself possessed of the right of eminent domain, certainly could not be invested with such a power by the court appointing him. And if a receiver of a corporation possessing the power exercised it, in a very literal sense he would do so by virtue of the corporate franchise. In no less sense do these trustees, by carrying on the intrastate business of a common carrier, do so by virtue of the corporate franchise of the Chicago Rock Island & Pacific Company. They thus become liable to the tax.

For the reasons given, I concur in the result announced by Mr. Justice BRICE.

ZINN, J., concurs.